**Joan Lee DAVIDSON, Respondent,**

v.

**Robert Gene DAVIDSON, Appellant.**

**No. WD 42349.**

Missouri Court of Appeals,
Western District.

March 20, 1990.

C. John Forge, Jr., Independence, for appellant.

Joan Lee Graebe, Lenexa, Kan., for respondent.

Before KENNEDY, P.J., and
LOWENSTEIN and BERREY, JJ.

KENNEDY, Presiding Judge.

A divorced father appeals from an order denying his motion to modify child support provisions of original dissolution decree.

The dissolution decree was granted on January 12, 1988. At that time the father was a steel production supervisor for Armco Steel. In 1987, the year before the dissolution, he had earned $32,000 or $39,-372. (It may be that the larger figure includes overtime while the smaller figure represents the basic wage; the record does not explain the discrepancy.) The father was ordered to pay to the mother as child support for their only child, a teen-age son (born October 19, 1973) whose custody was awarded to the mother, the sum of $300

per month. The cost of the youngster's maintenance was estimated to be $565 per month (not including housing costs) at the time of the motion trial. Housing costs for household which includes mother, new husband, son and, for three months of each year, new husband's two children by an earlier marriage, are roughly $1,650 per month including mortgage payments. One could reasonably apportion to the son $150–$250 for housing expense, making the total $715–$815 per month.

In May of 1988 father was laid off indefinitely from his Armco job.

After two or three months the father took a job with an agency whose business was to recruit financial and accounting executives for employers. In the year he had worked at this employment at the time of trial of the motion to modify, he had made approximately $9,600 in commissions. During the period of unemployment between the termination of the Armco job and his beginning the executive recruitment job, he had drawn $1,140 unemployment compensation, and he collected $183 per week in supplemental unemployment benefits for a year after the Armco termination, these benefits had been exhausted at the time of the motion hearing.

The mother in the meantime had remarried and had changed jobs. Her second job paid more than her earlier job ($31,500 per annum versus $29,760 per annum) and her economic circumstances were improved also by her marriage. The mother's improved circumstances are secondary in this case. The focus of the case is upon the father's diminished income.

 To furnish grounds for the modification of a parent's child support obligations on the grounds of changed circumstances, it is required that the change of circumstances be "substantial and continuing". Section 452.370, RSMo Supp.1989. This is a wise and necessary provision, for the parties should not be encouraged to come into court to seek and to resist increases and decreases of child support because of insubstantial or temporary fluctuations in the child's needs or the parents' fortunes. *Magaletta v. Magaletta*, 691 S.W.2d 457, 458 (Mo.App.1985); *In re Marriage of Johanson*, 569 S.W.2d 337, 338 (Mo.App.1978). Stability and predictability have their value. It is the burden of the applicant for modification of child support provisions to show such substantial and continuing change of circumstance. *Crowell v. Crowell*, 742 S.W.2d 244, 246 (Mo.App.1987); *Moore v. Morgan*, 723 S.W.2d 583, 584–85 (Mo.App.1987); *Forhan v. Forhan*, 693 S.W.2d 164, 165 (Mo.App.1985).

Does the evidence in this case show such substantial and continuing change of circumstances as to require the trial court to reduce the father's child support? We believe the trial court was in error in denying any relief to the father.

It is true that the reduction in the father's income for the year before the hearing was a *substantial* change of circumstances, but whether it was a *continuing* change of circumstances is the question. As compensation in his executive recruitment job, he received 35 percent of placement fees, which ran from $2,000 to $7,000 per placement. Of the seven to nine placements made during the year of his employment, five or six have been made in the second half. It appears that his income was on the upswing. These placements had been made during a period when, according to his testimony, "the job market on the whole in this particular industry is extremely soft and has been for the last eight or nine months". When asked what was the average income for people in his employment, he answered: "It varies; depends on—Again, too, speculating what the job market calls for, you can make anywhere from $15,000 the first year all the way up to whatever, basically, the economy is calling for."

A case like this one involves a certain amount of forecasting on the trial judge's part. It is not unreasonable upon this evidence to forecast that the father's earnings will improve—by a favorable change in the economy, or by the father's own greater experience and improvement in his skills. An intelligent, energetic and capable person accustomed to an income of more than $30,000 per year is not likely to remain at

father's present earning level. And if a reduction in child support is granted at the present time upon the father's motion, must the wife come back to court for an upward modification when his situation does improve?

On the other hand, realistically, it will quite probably be a considerable time before father's income approaches his income at the time of the original decree. A continuing change of circumstances is not necessarily a permanent change of circumstances. Mother's income is triple that of the father at the present time. More important than the discrepancy between the two gross incomes is the greater flexibility given the mother by her superior income; the discrepancy is striking when minimum living essentials are deducted from each income. The father's monthly child support obligation is reduced to $200 per month. *Huff v. Huff*, 755 S.W.2d 723, 725 (Mo.App.1988); *Leimer v. Leimer*, 670 S.W.2d 571, 572 (Mo.App.1984); *Crooks v. Crooks*, 666 S.W.2d 33, 34–5 (Mo.App.1984); *Hutcherson v. Hutcherson*, 553 S.W.2d 487, 488 (Mo.App.1977); *Foster v. Foster*, 537 S.W.2d 833, 836 (Mo.App.1976).

When should the reduction be made effective? To give it an effective date of the time of filing his motion would place upon the mother a heavy burden of repayment, either by lump sum cash repayment or by foregoing monthly payments for some period of time. We have determined that the effective date of the reduction should be March 1, 1990.

So ordered.

All concur.