**Richard Lee BUTLER, Respondent,**

**v.**

**Mary Kay BUTLER, Appellant.**

**No. 38228.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Dec. 27, 1977.

Motion for Rehearing and/or Transfer
Denied Feb. 14, 1978.

Application to Transfer Denied April
10, 1978.

David G. Lupo, St. Louis, for appellant.

William Gartenberg, Clayton, for respondent.

GUNN, Presiding Judge.

The parties to this dissolution proceeding were in their seventh year of marriage when they agreed that the marriage was irretrievably broken. At the time of the proceedings in 1976 they had three minor children—a daughter two years of age and twin sons less than a year old. The husband, a 1970 medical school graduate, was participating in a cardiology fellowship at Jewish Hospital. His 1976 income was estimated to be $13,000 from the fellowship and approximately $20,000 from part time work in the emergency room at Christian Hospital Northwest. There was no evidence that the husband owned any stocks or bonds, nor was there any evidence of the value of insurance policies held by him. The family home, purchased in 1971, cost $16,000, and $12,900 was still owed on it. The estimated value of the house was $30,000. Other marital assets were a 1974 Chrysler stationwagon and household furnishings having an estimated value of $5,000–$6,000. Cash in checking and savings accounts had been dissipated, according to the husband, for payments on the house, back taxes, loans and other bills. The wife's attorney established that there was considerable activity in deposits and withdrawals from the checking and savings accounts, but the only evidence before us is that the funds in the accounts had been exhausted. At the time of the proceedings, the husband was borrowing money for his living expenses, because the wife had attached his wages by garnishment proceedings.

Although the husband had reported taxable income of $56,980 in 1974, he testified that due to ill health, primarily a back ailment incurred in an accident, he could no longer endure the rigors of general medical practice nor perform at more than one place of work. Consequently, the husband preferred to limit his work to academic medicine:

"    .    .    .    I've considered practice at various times, but I've decided for my health and my interests that what I'm interested in is research and I want to go into academic medicine."

The tenor of the husband's testimony was that in the future he would be working less and at a reduced income.

The wife, prior to the marriage, completed three years of college, with a major in psychology. Her last work experience was in July, 1970 as a railway clerk at a salary of $600 per month. She terminated her employment when the husband completed his medical school studies. Her estimated monthly living expenses were $1,345 without regard to medical, dental or educational expenses for the children.

There was testimony from the wife that she was both healthy and unhealthy.[1] The wife contends that one of the twin boys is afflicted with cerebral palsy, requiring extensive medical treatment and expenses. The husband's analysis of his son's illness was that it was not as debilitating as depicted by the wife. But the husband did acknowledge the need for treatment for the son.[2] The wife was also anxious for her daughter to attend a private Montessorial school costing $1,500 in yearly tuition.

Finding no unique issues regarding the dissolution, the trial court awarded the wife the automobile, the household furniture, $150 per month child support for each of the two healthy children and $225 per month for the son with the health problem. The wife was also awarded as maintenance $250 per month for 24 months through June 30, 1978. The husband and wife were ordered to each pay one half of the $152 monthly house payment. Possession of the house was awarded to the wife until the youngest child reached the age of 21 or until the wife remarried. On the happening of either event the house was to be sold with the proceeds divided equally between the parties.

The trial court noted that the wife's attorney had been paid $2,500 in attorney's fees and awarded an additional $1,000 in fees to be paid by the husband.

The wife's appeal from the judgment presents a number of convoluted points for our consideration, but when sifted through the legal colander, the points of appeal refine to the basic issue of whether the trial court was too parsimonious in its award, and, hence, was guilty of an abuse of discretion.

We agree with the trial court that this case offers no novel theory of law to be resurrected for future guidance. Consequently, a full inditement of the pertinent law to the simple issue here presented is not warranted nor would it provide a necessary coruscation of legal rubric for guidance for the legal community. However, it is apparent that the award is not overly munificent. There is no danger that it would provide a sybaritic life style for the wife or for the children, and in view of the husband's earning potential, it would be best to increase the award somewhat.[3] Even the husband conceded at trial that the wife should not be required to work until the children had reached school age. We are also concerned that a parent would shirk financial responsibilities by deliberately reducing his income from a substantial earning capacity to satisfy his own desires, albeit that there is an apparent need for the husband to reduce his working activities due to health problems. As said in *Klinge v. Klinge*, 554 S.W.2d 474, 476 (Mo.App.1977): "The husband may still practice medicine; he has not lost his ability to earn substantial income. He may not escape his responsibility to his family or stymie justified support for them by deliberately limiting his work to reduce his income." But we are also bound by the ligatures which bind our review to a determination or whether the trial court, cloaked with substantial discretion, has abused its discretion by issuing a decree unsupported by substantial evidence or against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976); *Klinge v. Klinge*, supra; *Marriage of Schulte*, 546 S.W.2d 41 (Mo.App.1977). Here, the husband has the potential for substantial earnings even though at a reduced working capacity. The wife is required to care for three young children, one of whom is handi-

1. In response to questions the wife stated she was in good health, but then she proceeded to detail a long list of current infirmities.

2. "A. [Husband] Well, the consensus of opinion was that Danny [son] may or may not have a mild seizure disorder, but his electrocepholagrams [sic] have all been normal, and then some problems with increased muscle tone of the lower extremities and it may be

that he's a little slow in developing neuromuscular control and that he needs to take some medication three (3) or four (4) times a day and that he needs five (5) or ten (10) minutes of exercise which anyone can do about twice a day."

3. There is evidence to the fact that the wife did indulge herself with certain extravagances.

capped with health problems, and the husband concedes that the wife should not work with the young children at home. Consequently, we believe that the award of maintenance to the wife should be modified by removing the limitation of her maintenance to two years. We also believe that the husband should be required to make the entire monthly house payment of $152 for so long as the wife is living in the house under the terms of the trial court's award. In all other respects the award of maintenance and marital property is supported by substantial evidence, and no abuse of discretion appears in the award.

The wife complains of the award of attorney's fees, claiming that the wife's father had paid $1,500 of the fee. We read the order of the trial court as awarding the wife a total of $3,500 attorney's fees to be paid by the husband. The fact that the husband has not paid all the fee is not a matter for our consideration on this appeal. It is not our obligation to enforce the collection of the attorney's fees. The award of attorney's fees is a matter resting in the discretion of the trial court, and we find no abuse of that discretion regarding the amount of fees awarded here. *Barnhill v. Barnhill*, 547 S.W.2d 858 (Mo.App.1977); *Beckman v. Beckman*, 545 S.W.2d 300 (Mo. App.1976).

Finally, the wife complains that the trial court erred in failing to order the husband to comply with all previous court orders regarding payment of pendente lite awards. We do not view this matter as a proper subject for consideration on this appeal.

We have read the transcript, briefs and authorities cited by both parties and given effect to the relevant factors of § 452.330 RSMo Supp. 1975, and conclude that an extended opinion would have no precedential value. See Rule 84.16(b).

Judgment modified as follows: (1) two year limitation for maintenance payment to wife is removed; wife to receive $250 per month as maintenance until wife remarries or except as modified in subsequent proceedings; (2) husband to pay entire $152 monthly house payment. Judgment affirmed in all other respects.

KELLY and WEIER, JJ., concur.