823 S.W.2d 123 (1992)
Nouri H. AISADI, Petitioner-Appellant,
v.
Jaine A. AISADI, Respondent-Respondent.
No. 17613.
Missouri Court of Appeals, Southern District, Division Two.
January 27, 1992.
*124 R. Jack Garrett, Garrett & Ray, West Plains, for petitioner-appellant.
Frederick W. Martin, II, West Plains, for respondent-respondent.
MAUS, Judge.
Nouri H. AlSadi (Husband), on October 30, 1990, filed a petition for the dissolution of his marriage to Jaine A. AlSadi (Wife). Wife filed an answer and a cross-petition. The parties agreed upon the disposition of all issues except child support, right to claim the children as dependents, and travel responsibilities for visitation. On April 30, 1991, trial was held on those issues. The trial court by its judgment dissolved the marriage, distributed the marital property as agreed and placed three unemancipated children in joint custody, with the Wife to have primary physical custody. The judgment also set forth detailed visitation and travel arrangements. It awarded the Wife child support of $285.00 per month, per child. Husband appeals. The following is a sketch of the evidence.
The parties were married September 8, 1962, in Abilene, Texas. The Husband was 30 years of age and the Wife was 16 years of age. Husband was from Iraq but became a United States Citizen in 1970. The parties had six children, with the following birth dates: Tamara Ann Holloway, born July 19, 1963; Emaan Marie Jeffcoat, born November 1, 1965; Lathe Husseen AlSadi, born January 29, 1970; Tahseen Rhame AlSadi, born November 16, 1975; Mustafa Kais AlSadi, born November 29, 1978; and Riyadh Canaan AlSadi, born March 27, 1982. At the time the parties separated, the three older children were emancipated and the three younger children lived in the family home with the Wife.
The Husband's educational background and employment history is not fully developed in the evidence. He had earned an Associate of Art Degree in Machine Technology in Texas. His employment was described as an "instrument technician." On December 18, 1979, he was employed by Amerada Hess for work in the petroleum industry in the Middle East. His employment arrangements called for him to work 30 days in the Middle East and to be off 30 days. During the time he was off, he would return to the United States and live with the family.
A few years after the marriage, the Wife completed her high school education by obtaining a GED. During the marriage, she sporadically worked cleaning houses, babysitting and as a beautician. From 1979 until after the separation, with a minor exception, she did not work outside the home. Since that time, she has obtained a license as a real estate sales person and is so employed.
There is scant evidence of the history of the places of the family's residence. In 1989, the family moved from Texas to Lanton in Howell County, Missouri. There, they lived in a rented house. In July 1990, Husband left the family home. He first lived with daughter Tamara Ann Holloway and her husband Mark in Texas. At trial time, he was living with them in Springfield, Missouri. The Wife and three unemancipated children continue to live in the rented house.
The parties' tax returns for the years 1984 through 1989 show the Husband had the following income: 1984-$40,656; 1985-$40,656; 1986-$37,717; 1987-$42,664; 1988-$44,649; 1989-$45,980. With the exception of 1988, when Wife earned $515.00 for the year, those returns show the Wife had no income. In addition to the earnings shown on the tax returns, Husband, during his employment for Amerada Hess, accumulated significant fringe benefits.
At the time of trial, Wife had worked as a real estate sales person for eight months. She had earned commissions of $573.75. *125 She planned to stay in this business at least for a period of time as it permitted her to care for the children. She had also been assured that her earnings would increase.
Husband testified that in 1991, after he left the family home, he was "laid off" because of a reduction in force. He had an operation in 1988 for a ruptured intervertebral disc. He said he could not return to his work as an instrument technician because of his injury and physical condition. At the time of trial, he had worked for two weeks for his son-in-law in the car "detailing" business. His gross salary was $440.00 each two weeks.
The Wife testified the Husband worked as an instrument technician for three years after his surgery and had not complained. She also testified that he could work in that capacity not only in the oil industry but in any industry that involved flowing fluids "something like a plastics company or a brewery".
Husband submitted a "Calculation of Presumed Child Support Amount", following Civil Procedure Form 14. His exhibit showed the gross monthly income of each parent to be $952.00, presumed child support to be $596.00 and each parent's obligation to be $298.00.
The Wife submitted an exhibit itemizing her expenses for child support. This exhibit showed her expenses to be $1600-1700 per month. Husband did not dispute the expenses shown on the Wife's exhibit.
The Wife also submitted a "Calculation of Presumed Child Support Amount", following Civil Procedure Form 14. The Wife's exhibit showed her monthly income to be $736.00 and the Husband's monthly income to be $3,952.00, for a combined income of $4,688.00. Her exhibit showed the presumed child support to be $1,154.00. It concluded that her share was $185.00 and the Husband's was $969.00.
There was but little marital property to distribute. There was set apart to the Wife the household furnishings and a 1980 Ford Bronco. She agreed to waive a claim for maintenance, and Husband was to pay her $15,500.00 when he received his termination pay. There was set apart to Husband his personal items, a 1983 pickup truck and his fringe benefits with Amerada Hess including termination pay of $31,930.02. Also, when he reaches age 65, he is entitled to a pension from Amerada Hess of $500.00 per month. In addition, prior to trial, the Husband sold corporation stock accumulated as a fringe benefit for approximately $51,000.00. This was deposited in the parties' bank account. Wife spent a portion of those funds. The Husband withdrew $20,000.00, and testified that he spent those funds.
After the Husband left the family home, he initially paid the Wife $450.00 each two weeks for child support. In February 1991, he presented to Wife for her signature a Property Settlement Agreement that he wanted signed because he wanted to marry the woman he had been dating. Wife refused. Husband did not thereafter pay child support until ordered to do so by the trial court on March 6, 1991. Thereafter, in accordance with that order, he paid the Wife the sum of $450.00 each two weeks.
Husband states only the following point concerning the judgment entered by the trial court:
"The trial court abused its discretion and erred in setting child support based upon speculative circumstances as opposed to present data, and failed to properly balance the needs of the children with the needs of the father and his presently limited abilities."
It is obvious that this is an abstract statement and does not state "wherein and why" the judgment is erroneous, as provided by Rule 84.04(d). In re Marriage of McCoy, 818 S.W.2d 322 (Mo.App.1991). As a result, the point presents nothing for review. Rule 84.13; Estate of Goslee, 807 S.W.2d 552 (Mo.App.1991).
Moreover, a gratuitous consideration of Husband's argument in support of the stated point does not aid him. The essence of that argument is that the trial court erred in not computing child support under the formula set forth in Civil Procedure Form 14, based upon Husband's income *126 to be $440.00 every two weeks. In his brief, he states "[a] reasonable inference to be drawn would be that the Judge sought by the setting of child support to penalize the Petitioner for the Court's viewpoint of him, and such action is not nor ever has been within the law." This suggestion is not appropriate.
The principles applicable to a determination of Husband's ability to pay have been succinctly stated.
"In determining the financial condition of the father at the time an award is made, consideration may be given to his past and present earnings and his anticipated future earning capacity. Mueller v. Jones, 583 S.W.2d 222, 224 (Mo.App. E.D.1979), Murray v. Murray, 538 S.W.2d 587, 589 (Mo.App.E.D.1976); In re Marriage of Vanet, 544 S.W.2d 236 (Mo.App.W.D.1976); Tatham v. Tatham, 657 S.W.2d 717, 719 (Mo.App.E.D.1983); Nunn v. Nunn, 644 S.W.2d 370, 372 (Mo.App.E.D.1982). He may not escape his responsibility by voluntarily declining to work, Boyer v. Boyer, 567 S.W.2d 749, 751 (Mo.App.W.D.1978), by deliberately limiting his work to reduce his income, Butler v. Butler, 562 S.W.2d 685, 687 (Mo.App.E.D.1977), Goodwin v. Goodwin, 746 S.W.2d 124 (Mo.App.S.D.1988), or by otherwise disabling himself financially. Smith v. Smith, 558 S.W.2d 785, 789 (Mo.App.E.D.1977). A court may, in proper circumstances, impute an income to a husband according to what he could have earned by the use of his best efforts to gain employment suitable to his capabilities. Foster v. Foster, 537 S.W.2d 833, 836 (Mo.App.W.D.1976); Overstreet v. Overstreet, 693 S.W.2d 242 (Mo.App.W.D.1985). See also Morovitz v. Morovitz, 743 S.W.2d 893 (Mo.App. E.D.1988)." MoBar CLE, Family Law, Child Support Maintenance, § 14.7.
Those principles are embodied in the "Directions for Use" to Civil Procedure Form 14.
"If either parent is unemployed or underemployed, child support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community, and whether that parent is custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." Mo.Sup.Ct.R. 14 (1989).
The evidence relating to the Husband's skills and ability to earn need not be restated. He presented no evidence that he sought employment to utilize those skills. In determining what weight to accord Husband's employment by his son-in-law, the trial court could consider the following description of the job given by the Husband.
"Q. Okay. And what sort of work are you doing there?
A. We onlyWhile he goes pick up car, I watch the guy that wash the car and, you know, detail it, wax it and everything. I just watch him when he's not there.
Q. So, you're a detail man at the car wash?
A. Well, I'm not a real detail man, you know. I don't know nothing about detailing
Q. Uh-huh.
A. but he goes get the car, I stay there, answer the phone, watch the guy working, you know."
There was undisputed evidence Husband stopped paying any child support to coerce Wife into executing a Property Settlement Agreement so he could remarry. He did not resume supporting the children until he was ordered to do so by the court. There was also undisputed evidence that during the course of this litigation to establish Husband's responsibility for child support he threatened to see that Wife was sent to the penitentiary because of "hot checks" issued in Texas. From this and other evidence the trial court could draw an inference adverse to the Husband concerning his efforts to find more remunerative employment and that he was underemployed. *127 Under the authorities cited and the evidence in this case and the reasonable inferences to be drawn therefrom, the trial court did not err in fixing child support. Cf. Devries v. Devries, 804 S.W.2d 825 (Mo.App.1991).
Husband's remaining point is
"[t]he trial court erred and abused its discretion in refusing to reopen the cause to receive evidence concerning a viable issue of child abuse or neglect, and in refusing to appoint a guardian ad litem to protect and advocate the children's interests."
That point has the following background. On the 16th day after the judgment was entered, Husband untimely filed a "Motion for a New Trial, to Reopen for Additional Evidence, to Set Aside Judgment, and to Reconsider." In that motion, Husband alleges "there is evidence of child abuse which either was ignored or was not brought into evidence and which is substantiated by the attached reports." The "reports" referred to is a letter from Ozark Area Care and Counseling, Inc., to Husband's counsel on appeal. That letter states that the counselor was visited by Husband and his daughter Tamara Holloway. It continues that the daughter reported to the counselor incidents of abuse committed upon her by Wife when the daughter was a child. The motion was signed by counsel and by Husband, who "acknowledged that the facts stated therein are true and accurate to his best knowledge and belief." That motion was overruled by the trial court.
To support this point, Husband cites § 452.423 RSMo Cum.Supp.1989 and the redundant provision of § 210.160(1). Those statutes do not aid Husband. No pleading in this case alleged or even mentioned the possibility that any of the children of the parties had been or would be abused. Abuse was not an issue at the trial. Husband agreed that the three unemancipated children be placed in the primary physical custody of Wife. Those statutes cannot be construed to provide a vehicle for a mandatory new trial or reopening of a hearing upon the basis of this unsupported and unverified post-trial motion. Cf. Plunkett v. Aubuchon, 793 S.W.2d 554 (Mo.App. 1990). If there is abuse, or the real possibility of abuse, other remedies are available.
At best, Husband's motion is entitled to no more weight than a motion for a new trial upon the basis of newly-discovered evidence. The prerequisites for a new trial upon the basis of newly-discovered evidence have been repeatedly stated and categorized. Womack v. McCullough, 358 S.W.2d 66 (Mo.1962); Vanderson v. Vanderson, 668 S.W.2d 167 (Mo.App.1984). Those prerequisites include "that the affidavit of the witness himself should be produced, or its absence accounted for." Koenig v. Skaggs, 400 S.W.2d 63, 68 (Mo.1966). The motion is not accompanied by the affidavit of the daughter. The report is nothing more than hearsay. Husband's motion was insufficient as a motion for a new trial upon the basis of newly-discovered evidence.
Moreover, the motion was untimely filed. "This motion was not timely made, however, and served only as a suggestion to the trial court to exercise the powers conferred upon it by Rule 75.01." In re Marriage of Gillett, 762 S.W.2d 525, 527 (Mo.App.1988).
In exercising its discretion under Rule 75.01, the trial court could properly consider the following factors. Husband voluntarily left the children in the custody of Wife. Prior to the post-trial visit with the counselor, no one ever reported any abuse of any child of the parties. Husband did not plead abuse or the possibility of abuse of the children. He had lived with Tamara Holloway for many weeks before the trial. Yet, at the trial there was no suggestion of abuse or the possibility of abuse. Only after the trial court had entered a judgment that the Husband pay more child support than he desired, did the Husband provide the court with a hearsay report of child abuse. The trial court did not abuse its discretion in overruling Husband's motion. Cf. King v. King, 793 S.W.2d 200 (Mo.App.1990). The Husband's remaining *128 point is denied and the judgment is affirmed.
SHRUM, P.J., and MONTGOMERY, J., concur.