**Elda J. JONES, Appellant,**

v.

**Dennis F. JONES, Respondent.**

**No. WD 53579.**

Missouri Court of Appeals,
Western District.

Submitted Oct. 22, 1997.

Decided Jan. 27, 1998.

W. Douglas Thomson, Maryville, for appellant.

Dennis F. Jones, pro se.

Before ULRICH, C.J., P.J., and SMART and ELLIS, JJ.

PER CURIAM.

Elda J. Jones and Dennis F. Jones were married for approximately twenty-four years. Elda is appealing the judgment entered in the action dissolving that marriage. She claims that the trial court erred in failing to impute income to Dennis in calculating and awarding child support. She also contends the court erred in establishing an inappropriate benchmark for college education costs, in failing to consider Dennis's squandering of marital assets, and in setting aside a $7,044.00 loan as Elda's nonmarital property. The judgment of the trial court is affirmed.

Elda J. Jones and Dennis F. Jones were married October 20, 1972 in Denver, Colorado. Three children were born of the marriage: Gregory, born July 7, 1976; Gretchen, born January 23, 1978; and Jenny, born January 4, 1980. Until December, 1995, the couple owned a hardware store in Idaho Falls, Idaho. The store opened in 1981. Before opening the hardware store, Dennis worked as a bank auditor, and as a loan

officer. He also had taught banking at the University of Alaska.

As of June, 1993, the hardware store was worth approximately $240,000.00. Shortly thereafter, the business began to decline. Dennis attributed the decline of the store to the fact that the area's largest employer laid off over 6000 people. He also blamed the fact that a 120,000 foot home center opened a half mile from the hardware store, providing competition.

In August 1994, the family moved back to Missouri because Elda's mother, who lived in Missouri, had become ill. Dennis stayed in Idaho to run the business, returning to the family every six weeks or so. Dennis testified that from the time that the family moved to Missouri until the time that Elda filed for divorce on September 13, 1995, he provided at least $18,000.00 in support for the family's needs. He testified that he made car trips between Idaho and Missouri to bring the family's belongings to Missouri during this time. Dennis stated that he was not able to mind the business as much because of the time that he was spending in Missouri. Dennis tried to find a buyer for the business, but was unsuccessful. Dennis testified he was sinking deep into debt, while trying to send money to his family in Missouri. He also contacted a liquidating company but concluded that he would not get a great deal for the business if it were liquidated, and that there would still be a problem with his lease. He testified that he was working a seven-day, twelve-hour-a-day week. Finally, he said, he could not take the pressure any longer. He wrote letters to the bank and to his creditors to take the business. The Jones's home and airplane hangar were sold, and proceeds were applied to the couple's debts.

The two oldest children were both in college at the time of trial. Greg attends Webster University, a private college in St. Louis, Missouri. Although Greg had received grants to go to college and earned money for tuition through a work-study program, Elda testified that her out-of-pocket expense for Greg's education for the school year was $6,200.00. At the time of the trial, Gretchen was entering school as a freshman at Missouri Western on a full scholarship. The youngest child, Jenny, was a junior in high school. Dennis had not paid for any of the children's educational expenses. He did not begin to pay child support until ordered to by the trial court.

Dennis testified that prior to opening the store, he had always earned between $20,000.00 to $30,000.00 per year in his employment endeavors. At the time of trial he was earning very little. Dennis had moved to Oklahoma City, Oklahoma. When he arrived in Oklahoma he went to work for Home Depot, but quit because he could not do the work because of an incisional hernia. He decided to get a real estate license. Dennis is in the process of trying to build up a business in real estate in Oklahoma City. He is also working part time for Sears at a sales job paying minimum wage plus commission. His monthly income at the time of trial was about $500.00 per month. Dennis testified that he did not have any money and was living off of his credit cards.

Elda testified that from the time that the petition was filed until June, 1996, Dennis had not paid anything to support the children. She stated that she had borrowed $7,044.00 from her sister. She testified that some of the money was used to pay utilities and for payments on a life insurance policy associated with the loan on the Idaho business. The rest of the money was used to pay for expenses related to the children, including college expenses.

The trial court held two hearings on the matter. The first hearing was held on June 7, 1996. The second hearing was held after Elda filed a motion to amend the judgment, on September 25, 1996. The trial court entered an amended motion on October 1, 1996. The order provided, *inter alia*, that pursuant to Rule 88.01 and Form 14, Dennis' support payment would amount to $240.00 per month. The court determined the appropriate monthly gross income for Dennis was $750.00 per month. The court used the figure of $1,550.00 per month for Elda. The trial court also ordered that Dennis and Elda would each be required to pay one-half of the children's college expenses, pursuant to the following:

6. After considering all relevant factors, the parties shall each pay 50% of the cost each year for the minor children to attend a post-secondary college, university or vocational/technical school, state or private, subject to the following limitations:

(a) "Costs" shall include tuition, fees, books, and dormitory costs for room and board. It does not include room and board while residing with either parent.

(b) The 50% each party is to pay shall be the actual cost to the child, i.e., if the child receives a scholarship or other aid which reduces the cost, the "cost" does not include the amount of such scholarship or aid. For this purpose, loans to the student shall not be considered a "scholarship or other aid."

(c) The child must carry at least a minimum number of credit hours each semester which, according to the institution the child attends, constitutes a full load.

(d) The maximum cost which each party shall be responsible for in any given school year will be 50% of the then cost for tuition, fees, books and dormitory costs for room and board at Missouri Western State College, St. Joseph, Mo, regardless of what institution the child attends.

(e) The respondent/petitioner shall not be responsible for paying for more than eight semesters at a college or university.

(f) The petitioner/respondent shall pay the aforementioned sums directly to the minor child at such time as respondent/petitioner receives statements therefore.

(g) This provision relating to post-secondary costs shall apply to each of the three children.

Elda filed another motion for new trial or, in the alternative, to amend the judgment. A hearing on that motion was held November 13, 1996. At that hearing, the trial court considered the issues that Elda has raised in this appeal and denied relief. Elda appeals.

We must sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Deference is given to the trial court's determinations as to credibility. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). We view the evidence and inferences flowing therefrom in the light most favorable to the decree. *Id.* Cases involving issues of imputation of income necessarily require the exercise of the sound discretion of the trial court and cannot be considered a mechanical process. Absent a manifest abuse of discretion, we will not substitute our judgment for that of the trial court. *Elliott v. Elliott*, 920 S.W.2d 570, 574 (Mo.App.1996). We will set aside the judgment of the trial court only upon the firm belief that it is wrong. *DeCapo v. DeCapo*, 915 S.W.2d 343, 346 (Mo.App.1996).

## IMPUTATION OF INCOME

In her first point, Elda contends that the trial court erred in failing to impute significant income to Dennis for the purpose of calculating child support. She maintains that the evidence shows that Dennis could earn a substantial wage in several fields but chose not to use his existing talents in the most productive way. She argues that the trial court's decision was against the weight of the evidence. She points out that Dennis had fourteen years in the hardware business and had experience in banking. She claims that his new venture of selling real estate and his part-time work at Sears indicate that he is not making his best effort to become adequately employed. She also contends that Dennis' testimony that his real estate business is "coming" and that he feels "real positive about it" serves as evidence that his present low income is merely temporary. Elda claims that the trial court should have imputed future earnings to Dennis.

Where one of the parties is not employed or is underemployed, the trial court may attribute income to that party in the context of a Form 14 calculation depending on the factual circumstances. *Cuda v. Cuda*, 906 S.W.2d 757, 761 (Mo.App.1995). The

issue is whether the evidence supports the trial court's action in the calculation of child support pursuant to Form 14.

 In determining the appropriate calculation as to an issue of imputation of income, the court applies the considerations and procedures which have been stated as follows:

In determining the financial condition of the father at the time an award is made, consideration may be given to his past and present earnings and his anticipated future earning capacity. *Mueller v. Jones*, 583 S.W.2d 222, 224 (Mo.App.1979), *Murray v. Murray*, 538 S.W.2d 587, 589 (Mo.App. 1976); *In re Marriage of Vanet*, 544 S.W.2d 236 (Mo.App.1976); *Tatham v. Tatham*, 657 S.W.2d 717, 719 (Mo.App. 1983); *Nunn v. Nunn*, 644 S.W.2d 370, 372 (Mo.App.1982). He may not escape his responsibility by voluntarily declining to work, *Boyer v. Boyer*, 567 S.W.2d 749, 751 (Mo.App.1978), by deliberately limiting his work to reduce his income, *Butler v. Butler*, 562 S.W.2d 685, 687 (Mo.App.1977), *Goodwin v. Goodwin*, 746 S.W.2d 124 (Mo. App.1988), or by otherwise disabling himself financially. *Smith v. Smith*, 558 S.W.2d 785, 789 (Mo.App.1977). A court may, in proper circumstances, impute an income to a husband according to what he could have earned by the use of his best efforts to gain employment suitable to his capabilities. *Foster v. Foster*, 537 S.W.2d 833, 836 (Mo.App.1976); *Overstreet v. Overstreet*, 693 S.W.2d 242 (Mo.App.1985). *See also Morovitz v. Morovitz*, 743 S.W.2d 893 (Mo.App.1988).

*AlSadi v. AlSadi*, 823 S.W.2d 123, 126 (Mo.App.1992), citing MoBar CLE, Family Law, Child Support Maintenance, § 14.7. The directions for completion of Form 14 embody these principles:

[C]hild support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court or administrative agency may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community. . . .

**Civil Procedure Form No. 14.** Although a court is permitted to impute the income to a parent that he or she earned in the past, an award of child support must always be supported by evidence of the parent's ability to pay. *Walker v. Walker*, 936 S.W.2d 244, 248 (Mo.App.1996). "Proof that a parent has previously made more money . . . is not alone a sufficient basis upon which to impute income at those levels," as the amount imputed must be based on the types of evidence discussed in the Form 14 instructions. *Id.*

*State ex rel. O.A. by Atkinson v. Anthony*, 947 S.W.2d 832, 834–35 (Mo.App.1997).

 There is substantial evidence in the record supporting the conclusion that Dennis did not intentionally reduce his income to avoid his responsibility toward his children. Dennis testified that the family hardware store lost business and became valueless due to changes in competition and because of the time he spent with his family after they had moved to Missouri. There was also evidence that because of a medical condition he was no longer employable at some positions. He testified that he could not retain his position at Home Depot, and that he decided to get a real estate license after he had determined he was not physically able to do some jobs. While it is likely that, in the short run, Dennis could have obtained employment paying more than he is currently earning in real estate, the trial judge must be allowed some latitude in judging how much imputation of income is appropriate in a given set of circumstances. Where the record does not establish an attempt to evade parental responsibilities, courts have some discretion to set child support at a figure which will not be so great as to destroy incentive or impair the position of the non-custodial parent. *See Jensen v. Jensen*, 877 S.W.2d 131, 137 (Mo. App.1994). In view of the fact that Dennis' resources were exhausted, the court in its discretion could have believed it was best to allow Dennis some breathing room, believing that he would get back on his feet financially. When Dennis does so, of course, nothing would prohibit Elda from obtaining a modifi-

cation under § 452.370. Thus, we cannot say that the trial court's decision to allow Dennis some financial footing was clearly wrong. The amount of $750.00 is extremely low, however, because it is not even minimum wage-level earnings. We would be reluctant to approve any level of attribution below minimum wage for a person capable of full-time employment. Here, if the trial court had not also required Dennis to share in the thousands of dollars of the children's post-secondary educational costs, we would be shocked at this decision, and would find an abuse of discretion for failure to attribute at least minimum wage earnings to Dennis. However, in view of the court's decision as to the educational costs as to Greg and Gretchen, both currently in college, and Jenny, who will enter college shortly, we cannot say that we have a "firm belief" that the trial court's judgment is wrong. *DeCapo v. DeCapo*, 915 S.W.2d 343, 346 (Mo.App.1996).

## COLLEGE COSTS

In Point II, Elda argues that the trial court erred in setting Missouri Western State College as the benchmark for college educational costs. She reasons that the decision was against the weight of the evidence since the evidence shows that the child attending Missouri Western incurs no costs as a results of scholarships and that the other child, attending Webster College, a private institution, has more costs associated with his education. Greg, the child attending Webster College, has received scholarships and is in a work study program. Elda complains that using the trial court's formula and subtracting the scholarships received, Dennis would not have to pay anything toward Greg's education. We fail to see how Elda has arrived at this conclusion. Under the terms of the judgment, Dennis will pay one-half of "the actual cost to the child" for his or her education. The amount that Dennis must pay, however, is capped. The judgment provides that "[t]he maximum cost which each party shall be responsible for in any given school year will be 50% of the then cost for tuition, fees, books and dormitory costs for room and board at Missouri Western State College, St. Joseph, Mo, regardless of what institution the child attends." The

trial court's order is clear. Dennis will pay the one-half of the actual cost of Greg's education, after Greg's scholarships have been deducted from his tuition costs. The amount that Dennis pays, however, is not without limit. That limit is clearly spelled out in the trial court's judgment. It is not limited to Grethchen's cost of attending Missouri Western but to the actual costs charged by Missouri Western.

We presume that the trial court's order is correct; Elda has the burden of demonstrating that it is not. *DeCapo*, 915 S.W.2d at 348. The trial court is in the best position to make a determination concerning a parent's financial ability to assist in the support of his or her child, including expenses associated with a college education. *Leahy v. Leahy*, 858 S.W.2d 221, 226 (Mo. banc 1993). The trial court balances the ability of the non-custodial parent to pay these expenses against the needs of the child. *DeCapo*, 915 S.W.2d at 349. The record reflects that the trial court properly considered these factors when making its decision. At the hearing on Elda's second motion to amend judgment, counsel for both sides had an opportunity to argue the issues presented by Elda in the instant case. The court, in commenting upon the educational issue, stated:

As to the seven thousand forty-four dollar debt that was incurred by the petitioner, I did not find that to be marital property, I found that to be a separate debt incurred by the petitioner for her own benefit although she used this from her testimony to pay expenses for the education. This court does not find that that education was justified and those expenses justified. I think the parties have an obligation to try to live within their means. And I think there were disastrous financial occurrences with this family, there's tremendous personal problems that exist between them and obviously a lot of the bitterness between the petitioner and the respondent and also it is evidenced by the conduct of the children. There's very little the court can do to solve any of that. But I don't think it is realistic to expect someone to pay things which are not necessary

and just not affordable. I think a private education is certainly a luxury and it's something that can be accomplished if they have the wherewithal and the student has the initiative to see it continues. I don't think that is a parent's obligation.

It is apparent that the trial court considered the ability of both parents to pay for Greg's private school tuition and concluded that private education was a luxury given the parties' financial situation. The trial court did not excuse Dennis entirely from paying these expenses, but crafted an order based upon evidence of what it deemed appropriate. We find no error in these provisions. Point II is denied.

## SQUANDERING OF ASSETS AND FINANCIAL MISCONDUCT

In her third point, Elda contends that the trial court erred in failing to consider Dennis' squandering of assets and financial misconduct which she alleges caused a reduction in the value of the marital property. Elda claims that Dennis just packed up and left the business to his creditors without first trying to contact other retailers or without attempting to make a reasonable, systematic liquidation attempt. She further claims that the business assets were not the only assets "squandered" by Dennis, pointing to sales of the Dennis' truck and the airplane hangar. Elda argues that the assets were squandered in anticipation of the dissolution action.

The trial court has broad discretion in making determinations concerning issues relating to the squandering of assets. *Ray v. Ray*, 877 S.W.2d 648, 651 (Mo.App. 1994). Therefore, where a court hears evidence showing that a spouse has secreted or squandered a marital asset in anticipation of a dissolution action, the court may hold that spouse liable for the squandered asset. *Witt v. Witt*, 930 S.W.2d 500, 505 (Mo.App.1996). The spouse alleging that property has been squandered must present evidence on the issue or squandering will not be found and reimbursement will not be ordered. *Lawrence v. Lawrence*, 938 S.W.2d 333, 338 (Mo. App.1997). "[T]here is no rule which mandates the trial court to include in its division

of property the value of all marital property which was disposed of prior to the hearing for division of property." *Stratman v. Stratman*, 948 S.W.2d 230, 239 (Mo.App.1997).

We find no abuse of discretion. The trial court heard evidence that Dennis contacted various people concerning his decision to sell the business, including liquidators and auctioneers. During the period where the business was failing, Dennis was working seven days a week. Before the dissolution proceedings were filed, he provided financial support for the family and spent time in transit between Idaho and Missouri, hauling various family possessions to Missouri. He testified that he made reasonable efforts to sell the business. He also explained that there was a problem in that the lease he had on the building had two years more to run. Besides the checking that he did with the liquidators and auctioneers, Dennis consulted a member of the board of directors of the Better Business Bureau who was in the liquidation business who told him, "Dennis, I think you'll be lucky if you get ten cents on the dollar to be honest with you." He never received a bona fide offer to purchase the business. He also testified that he got the best price that he could for his truck and that he took the best offer on the airplane hangar.

The trial court may accept Dennis' testimony within the exercise of its discretion. *Lawrence*, 938 S.W.2d at 338. It is in the best position to determine Dennis' credibility and we defer to its determination. *Ray*, 877 S.W.2d at 651. The trial court did not err in failing to find that Dennis squandered marital property. Point is denied.

## LOAN AS NONMARITAL PROPERTY

Elda, in her final point, contends that the trial court erred in setting aside a $7,044.00 loan as her nonmarital property. She claims that the loan was used during the pendency of the dissolution proceeding to protect marital property and to support the minor children during a period where no support was provided by Dennis. She claims that the decision of the trial court was not supported by substantial evidence and was against the weight of the evidence.

Elda sites *Klaus v. Klaus*, 918 S.W.2d 407, 409 (Mo.App.1996) for the proposition that if marital assets are used to increase the value of nonmarital assets, the marital assets may be recovered to the extent of the contribution made. She reasons, therefore, that a non-marital debt used to protect and preserve marital assets should be recoverable from the marital estate. At the very least, she contends, the amount should be considered marital property and apportioned between the parties for repayment.

 The trial court found that the loan was used to pay educational expenses and was a loan made for Elda's personal benefit. It was within the trial court's discretion to so categorize it. The trial court has great discretion in determining how property and debts should be divided. *Stratman*, 948 S.W.2d 230, at 236. Even if this court might have reached a different result, we will not substitute our judgment for that of the trial court. *Id.* In addition, even were the debt to be considered a marital debt, the trial court has no obligation to distribute the debt, although the debt should be considered in determining whether the division of marital property is fair. *Carter v. Carter*, 940 S.W.2d 12, 17 (Mo.App.1997). This is because debts incurred during the marriage are not considered marital property. *Id.* Also, it is acceptable that marital debt be unequally divided absent an abuse of discretion on the part of the trial court. *Lawrence*, 938 S.W.2d at 337. Elda does not demonstrate any abuse on the part of the trial court.

Elda also cites *State ex rel. Division of Family Servs. v. Standridge*, 676 S.W.2d 513, 515 (Mo. banc 1984) as support for the proposition that the noncustodial parent has the primary duty and obligation to support his children and, when he does not supply them with necessities, he is liable to a third party who provides them, unless they are furnished gratuitously. Elda argues that if the State can seek restitution from a noncustodial parent, she too ought to be able to be repaid for necessities.

There are several problems with these arguments. Initially, we note that Elda, in her brief, states that the bulk of the loan went to college expenses for the two older children.

The trial court found that the debt was not marital property, but "a separate debt incurred by the petitioner [Elda] for her own benefit although she used this from her testimony to pay expenses for the education." The trial court found that the education was not justified and was a luxury. Hence the education was not a "necessity." Point IV is denied.

The judgment of the trial court is affirmed.