**Deborah Marie PELCH (formerly Deborah Marie Schupp), Respondent,**

**v.**

**Mark Carstens SCHUPP, Appellant.**

**No. WD 56015.**

Missouri Court of Appeals, Western District.

May 11, 1999.

As Modified June 1, 1999.

Susan Ford Robertson, Columbia, for Respondent.

Wendy L. Wooldridge, Boonville, for Appellant.

Before: ELLIS, P.J., and
LOWENSTEIN and HOWARD, JJ.

HOWARD, Judge.

Mark Carstens Schupp appeals from a judgment modifying a decree of dissolution of marriage. The first point on appeal is that the trial court erred in increasing the monthly child support award to Pelch from $343.00 to $1,000.00 because the court failed to consider all relevant factors in calculating the presumed correct child support amount, including the financial resources and needs of the parties, and it failed to impute any income to Pelch despite her past, present, and anticipated future earning capacity and her duty to contribute to the support of the child. The second point on appeal is that the trial court erred in ordering Schupp to pay Pelch's attorney's fees and costs because 1) the restrictions and conditions regarding payment of the fees and costs agreed on by the parties and set forth in the decree of dissolution of marriage were not met; and 2) Pelch has funds available to pay the fees and costs.

We affirm in part and reverse and remand in part.

## Facts

Mark Carstens Schupp and Deborah Marie Pelch were married on September 5, 1987. One child, Eric Carstens Schupp, was born of the marriage on July 6, 1990. On July 22, 1994, a decree of dissolution of marriage was entered dissolving the marriage of the parties. The parties entered into a marital settlement and separation agreement in connection with the initial dissolution proceeding. In accordance with the agreement, the parties were awarded joint custody of the minor child.

Pelch received primary physical custody of the minor child. Schupp was ordered to pay child support in the amount of $343.00 per month.

Following entry of the initial decree, Pelch voluntarily quit her job as a flight nurse at the University Hospital and Clinics in Columbia, Missouri in order to return to school full-time. At the time she quit her job, she was self-supporting. Her income exceeded $43,000.00 per year. Pelch testified that she hoped to earn considerably more money upon graduation. She started her studies in May 1997 and anticipates graduating in December 1999. Pelch testified that she is forbidden to work during the first year of schooling. At the time of trial, Pelch was approximately one month short of completing her first year of schooling. She receives an average of $1,300.00 each month from her student loans.

Pelch sold a house in Columbia, Missouri, which provided her with some money, and the information regarding the funds was disclosed in her financial statement. Pelch's financial statement shows bank accounts containing funds in excess of $40,000.00. Pelch's decision to return to school required her to relocate from Columbia to the Kansas City area. Increased fees, costs and expenses resulted from Pelch's choice to relocate and lack of employment.

Since entry of the initial decree, Schupp changed employment, which resulted in an increase in his income. Schupp's current monthly gross income is $2,661.00.

At trial, Pelch argued that Schupp should be held responsible for the entire child support amount and all child care costs. In response to Pelch's request for an increased child support award, Schupp acknowledged and testified that the initial child support award should be increased to reflect his increase in income. However, Schupp denied that he should be held responsible for the amount requested by· Pelch due to her voluntary change of financial circumstances.

The trial court found in favor of Pelch on the issue of child support and ordered an increase in the monthly award from $343.00 to $1,000.00. The trial court also ordered Schupp to pay Pelch's attorney's fees totaling $2,487.00, as well as court costs. This appeal followed.

## Standard of Review

▪ Review of the trial court's determination of a child support modification is performed under the auspices of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), which directs that the trial court's ruling will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Patton v. Patton*, 973 S.W.2d 139, 144 (Mo. App. W.D.1998). We view the evidence in the light most favorable to the judgment and disregard all contrary evidence. *Id.* There is an abuse of discretion when the trial court's ruling is clearly against the logic of the circumstances and is so arbitrary as to shock one's conscience and indicates a lack of consideration. *Id.*

## Point I

The first point on appeal is that the trial court erred in increasing the monthly child support award to Pelch from $343.00 to $1,000.00 because the court failed to consider all relevant factors in calculating the presumed correct child support amount, including the financial resources and needs of the parties, and it failed to impute any income to Pelch despite her past, present, and anticipated future earning capacity and her duty to contribute to the support of the child.

As an initial matter, we address Pelch's argument that Schupp's claim of error in his point relied on differs from the substance of Schupp's actual argument. As stated above, Schupp's claim of error is that the trial court failed to consider all relevant factors in calculating the presumed correct child support amount, in-

cluding the financial resources and needs of the parties, and it failed to impute any income to Pelch despite her past, present, and anticipated future earning capacity and her duty to contribute to the support of the child. Pelch claims that Schupp should be seeking reversal on the issue of whether the trial court erred in rejecting his Form 14, rather than arguing that the court erred by failing to consider all relevant factors when determining whether to rebut the presumed correct child support amount as being unjust or inappropriate.

■ In discussing this issue, we summarize this court's thorough explanation of the difference between rejection of a Form 14 and rebuttal of the presumed correct child support amount, provided in *Woolridge v. Woolridge,* 915 S.W.2d 372, 378–79 (Mo.App. W.D.1996). Rejection of a Form 14 calculation by a party occurs when the trial court finds that: 1) an item is incorrectly included in the calculation; 2) an amount of an item included in the calculation is incorrect; or, 3) the mathematical calculation is incorrect. *Woolridge,* 915 S.W.2d at 378. In determining whether to reject a Form 14 amount as not being correctly calculated, the trial court only considers Form 14 worksheet factors, the items which are properly included in the calculation and the correct amount of each, and does not take into consideration non-Form 14 factors. *Id.* at 379. In doing so, the court is to be guided by the worksheet's directions for completion and comments for use, and the evidence in the case. *Id.*

■ Pursuant to Rule 88.01 and § 452.340.8, rebuttal of the presumed correct child support amount calculated pursuant to Form 14 occurs when the trial court determines the amount is unjust or inappropriate after consideration of all relevant factors, including the factors set out in Rule 88.01 and § 452.340.1. *Id.* at 378–79. Unlike a Form 14 calculation, there is no mandatory worksheet or formula to be used in determining whether a Form 14 amount is unjust or inappropriate. *Id.* at 379. Consequently, the trial court in making a rebuttal determination may take into consideration non-Form 14 factors. *Id.*

We find that Schupp is actually making two arguments here. First, he is arguing that the trial court failed to consider all relevant factors in determining the presumed correct child support amount. More precisely, he is arguing that the trial court erred in determining his proportion of the presumed correct child support amount because it failed to impute income to Pelch. Implicit in this argument is the claim that the trial court erred in rejecting his Form 14, in which he imputes income to Pelch. Second, he is arguing that the trial court failed to consider all relevant factors in deciding not to rebut the presumed correct child support amount. Although Schupp's point relied on could have been phrased more accurately, the substance of his argument is clear from his point relied on.

We now discuss the merits of Schupp's first point on appeal. Schupp contends that there is no evidence that the court considered the financial resources of Pelch, including funds in excess of $40,000.00 and her $1,300.00 monthly student loan payment, when modifying the child support amount. He also contends that one month following trial, Pelch was capable and remains capable of securing at least part-time employment. Schupp further contends that the court failed to recognize that the child support award is in excess of fifty percent of his monthly net take-home pay, and he is unable to meet his monthly financial needs and living expenses when he is held completely responsible for the financial support of the parties' minor child.

At the time of the modification, Rule 88.01 provided as follows:

> When determining the amount of child support to order, a court ... shall consider all relevant factors, including (a) the financial resources and needs of the child; (b) the financial needs and re-

sources of the parents; (c) the standard of living the child would have enjoyed had the marriage not been dissolved; (d) the physical and emotional condition of the child; and (e) the educational needs of the child. There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded in any judicial ... proceeding for ... child support. It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is correct if the court ... enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.

At the time of trial, the Directions for Completion of Form 14 provided as follows:

> If either parent is unemployed or underemployed, child support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court ... may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community, and whether that parent is custodian of a child whose condition or circumstances make it appropriate that the custodian not be re-

quired to seek employment outside the home.[1]

■ Where a parent is unemployed or underemployed, the court may attribute income to that parent, but it depends upon the circumstances. *Jones v. Jones*, 958 S.W.2d 607, 611 (Mo.App. W.D.1998); *Cuda v. Cuda*, 906 S.W.2d 757, 761 (Mo. App. W.D.1995). What constitutes the appropriate circumstances to impute income will depend on the facts and must be determined on a case-by-case basis. *Smith v. Smith*, 969 S.W.2d 856, 859 (Mo.App. E.D.1998). Cases involving issues of imputation of income necessarily require the exercise of the sound discretion of the trial court and cannot be considered a mechanical process. *Jones*, 958 S.W.2d at 611.

Where a spouse has voluntarily forgone employment to attend school, some courts have imputed at least some income to the student-spouse, while others have not imputed any income to the student-spouse reasoning that the student was "preparing herself to make her living and to contribute to the support of the children." *Stufflebean v. Stufflebean*, 941 S.W.2d 844, 846 (Mo.App. W.D.1997)[2] (citing *Cuda*, 906 S.W.2d at 761, as an example of the latter situation).[3]

■ In *Boyer v. Boyer*, 567 S.W.2d 749 (Mo.App.1978), this court considered whether the trial court erred in imputing income to a non-custodial parent who had decided to go to college rather than work. In finding that the trial court did not err in

---

1. The Eastern District has found that factors a trial court should consider in imputing income are: (1) the age, maturity, health, and number of children in the home; (2) the custodial parent's employment history, including recency of employment and earnings, as well as the availability of suitable employment; (3) the age and health of the custodial parent; (4) the availability of appropriate child-care givers; (5) the relationship between the expense of child-care givers and the net income the custodial parent would receive; (6) the cost, if any, for transportation, suitable clothing, and other items required for the custodial parent to have the imputed employment; (7) the custodial parent's motivation or reasons for being at home; and (8) the adequacy of available resources if the custodial parent remains at home. *Woolsey v. Woolsey*, 904 S.W.2d 95, 99 (Mo.App. E.D.1995); *Stanton v. Abbey*, 874 S.W.2d 493, 499 (Mo.App. E.D.1994).

2. In *Stufflebean*, we found that the trial court did not err in imputing minimum wage income to a mother who quit her job to return to school. *Id.* at 846.

3. *Cuda* is factually dissimilar to the case at bar. The mother in *Cuda* had no substantial savings and she lost her job rather than quitting voluntarily. *Id.*

imputing income to the father, we found as follows:

> The husband's desire to obtain a college degree can only be commended. Against that, however, must be set his *higher duty* to contribute to the support of the two children whom he brought into the world. There are ways by which he can do both. For example, he can take on a part time job. If necessary, he can lighten his scholastic load and stretch out his education over a longer period of time. Another possible recourse would be to apply for a student or other type of loan. How the husband wants to proceed with respect to the avenues open to him is a matter for him to choose. But, he cannot voluntarily decline to work and then plead lack of income as an excuse for not being able to contribute adequately to his children's needs.

*Id.* at 751.[4] (Emphasis added.) Similarly, in the present case, we find that Pelch may not totally abandon her responsibility to support her child financially, where the evidence shows that she had substantial savings and a job that paid well, which she voluntarily quit.

In *Jones,* 958 S.W.2d at 612, one of the issues was whether the trial court properly imputed less than minimum wage income to the non-custodial parent for the purpose of determining child support. The non-custodial parent had owned a hardware store that became valueless due to increased competition and time he spent with his family. *Jones,* 958 S.W.2d at 612. He decided to get a real estate license after he had determined he was not physically able to do some jobs in his field due to a medical condition. *Id.* This court found that there was substantial evidence that the non-custodial parent did not intentionally reduce his income to avoid his responsibility to his children. *Id.* We further found that while it was likely that in the short run, the non-custodial parent could have obtained employment paying more than he was earning in real estate, the trial judge "must be allowed some latitude in judging how much imputation of income is appropriate in a given set of circumstances." *Id.* However, we expressed a reluctance to approve "any level of attribution below minimum wage for a person capable of full-time employment." *Id.* at 613. We stated that if the trial court had not also required the non-custodial parent to share in the thousands of dollars of the children's post-secondary educational costs, we would be shocked at the trial court's decision to impute less than minimum wage income to the non-custodial parent, and we would find an abuse of discretion for failure to attribute at least minimum wage earnings to that parent.[5] *Id.*

Pelch cites *Gal v. Gal,* 937 S.W.2d 391 (Mo.App. E.D.1997), in support of her argument that the trial court did not err in refusing to impute income to her. In *Gal,* the father appealed the trial court's modification of the child support provision of the dissolution decree. *Id.* The trial court found that the mother, who was enrolled full-time in nursing school, incurred increased expenses "as a result of her efforts to gain further education so she will be self-supporting." *Id.* at 393. Although the trial court found that the mother was "able bodied and capable of employment" and she had $1,500.00 gross income per month from an inheritance, the court did not impute income to the mother because it found that she was "making a sincere attempt to improve her earning capacity in the future so that she may be better able to support herself and her children." *Id.* The Eastern District found that the trial

---

4. While *Boyer* involved a non-custodial parent, we see no reason to differentiate between custodial and non-custodial parents when considering their obligation to support their children financially.

5. While *Jones* did not involve a parent returning to school, it is analogous to the present case because it involved a parent who voluntarily reduced his income.

court did not abuse its discretion by refusing to impute income to a mother who was "making a sincere attempt to improve her earning capacity by continuing her education." *Id.* at 397.

Schupp attempts to distinguish *Gal* on the basis that Pelch, unlike the mother in *Gal,* was already self-supporting prior to quitting her job and returning to school. While the court in *Gal* specifically noted that the mother was able-bodied and capable of employment at the time she returned to school, the opinion does not indicate what job skills the mother had prior to going to nursing school, or what her educational or work history was. *Id.* at 393. However, the opinion does emphasize that by going to school, the mother would become self-supporting. By implication, this suggests to us that the mother was not capable of supporting herself prior to going to school.

In any event, we decline to establish a rigid rule that a court must impute income to a self-supporting parent who quits her job to return to school. We recognize that there may be cases where a trial court may properly choose not to impute income to such a parent. Rather, we are simply stating that the opinion in *Gal* does not provide us with enough information to know whether that case may be distinguished from the case at bar. Furthermore, we reiterate that issues involving the imputation of income are highly fact-dependent and must be considered on a case-by-case basis.

■ We are mindful of the great amount of discretion afforded the trial court in modification of child support awards, and we are "extremely reluctant to reconsider the amount of that increased support." *In re Marriage of Walker,* 661

S.W.2d 65, 67 (Mo.App. S.D.1983). However, if an award is clearly contrary to applicable law, it is the duty of this court to adjust the award. *Id.* at 67–68. "This is true even though the result may be viewed as second guessing and perhaps nit picking." *Id.* at 68.

■ We find that in the present case, the trial court abused its discretion in refusing to impute at least some income to Pelch. While Pelch's motive in returning to school may have been worthy,[6] we will not affirm a child support award that allows a custodial parent who has savings of more than $40,000.00, good job skills, and a job paying $43,000.00 a year to quit her job, return to school, and place the entire financial burden of supporting the child on the non-custodial father for the duration of her schooling. While the record indicates that Pelch was not allowed to work during her first year of school, at the time of trial Pelch was one month away from finishing her first year of school, and she would have been able to work at least part-time while she finished her education. In addition, Pelch's decision to attend a school that does not allow its students to work during the first year was entirely voluntary, and she may not now use this restriction on her ability to work as an excuse to avoid supporting her child financially.

To summarize our holding on this point, we find that the court erred in calculating the presumed correct child support amount because it failed to impute income to Pelch. We reverse and remand with instructions that the trial court calculate the presumed correct child support amount pursuant to Form 14, imputing a reasonable amount of income to Pelch.

**6.** The Eastern District has gone so far as to hold that "[c]ourts should not impute income where the record does not establish an attempt to evade parental responsibilities." *Smith,* 969 S.W.2d at 859. While the Western District has not gone that far, this court has found that the motive for reducing income is a factor to consider in reviewing a

trial court's decision concerning the imputation of income. *See Roberts v. Roberts,* 847 S.W.2d 108, 109 (Mo.App. W.D.1992) (finding that trial court did not err in refusing to impute greater income to father where father did not reduce his income to avoid responsibility or with any unworthy motive).

## Point II

The second point on appeal is that the trial court erred in ordering Schupp to pay Pelch's attorney's fees and costs because 1) the restrictions and conditions regarding payment of the fees and costs agreed on by the parties and set forth in the decree of dissolution of marriage were not met; and 2) Pelch has funds available to pay the fees and costs.

■ The trial court has broad discretion in awarding attorney's fees, and the award will not be disturbed on appeal absent an abuse of that discretion. *Stufflebean*, 941 S.W.2d at 847. In making the award, the trial court must consider all relevant factors, including the financial resources of both parties. *Id.* One spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse in a modification proceeding. *Patton*, 973 S.W.2d at 149.

■ The relevant portion of the marital settlement and separation agreement, which was incorporated into the decree of dissolution of marriage, is as follows:

> In the event either party hereto shall bring a Court action for failure to perform any of the covenants or obligations imposed by this Agreement, or for enforcement or clarification of the same, the party prevailing in any such litigation shall be entitled to recover his or her reasonable attorney's fees together with all Court costs, provided, however, attorney fees shall be payable only in the event that the party instigating such litigation shall first have advised the other party by written notice ... of the alleged failure to perform and with any such alleged failure to perform not being corrected or cured within fifteen (15) days subsequent to the date of mailing....

The trial court found as follows:

> With respect to the issue of attorney fees, the request for enforcement of the terms of the MARITAL SETTLEMENT AND SEPARATION AGREEMENT between the parties, dated June 20, 1994, which was incorporated in the said Decree of Dissolution

of Marriage was withdrawn as an issue to be determined herein by the Court and the appropriate amount of child support is an issue to be determined by the Court, irrespective of any contractual agreements of the parties.

This is not an action for failure to perform any of the covenants or obligations imposed by the separation agreement, or for enforcement or clarification of the agreement. Rather, it is an action for modification of the agreement. Therefore, the trial court correctly determined that the parties' agreement concerning attorney's fees is inapplicable in this case.

■ In *Stufflebean*, where the father's gross monthly income was $2,222.00 and the mother was unemployed and a full-time student, we found that the trial court did not abuse its discretion in ordering the father to pay the mother's attorney's fees. *Stufflebean*, 941 S.W.2d at 847. Similarly, we find that the trial court did not abuse its discretion in ordering Schupp to pay Pelch's attorney's fees in this case.

The judgment of the trial court is reversed and remanded on Point I, with instructions to impute income to Pelch. The judgment of the trial court is affirmed on Point II.

All concur.