**Thomas Allen GOODWIN, Appellant,**

v.

**Diana Kay GOODWIN, Respondent.**

**No. 15159.**

Missouri Court of Appeals, Southern District, Division One.

Feb. 29, 1988.

John E. Curran, Shaun K. Baskett, Curran and Clifford, Osage Beach, for appellant.

W. Gary Drover, Camdenton, for respondent.

HOLSTEIN, Judge.

Appellant Thomas Allen Goodwin (Tom) appeals from certain provisions of a decree of dissolution of marriage awarding respondent Diana Kay Goodwin (Diana) child support of $1,200 per month and maintenance of $300 per month. On appeal, Tom claims the trial court's award of child support and maintenance was against the weight of the evidence, was not supported by substantial evidence, and amounted to an abuse of discretion.

Our standard of review requires affirmance of the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Ederle v. Ederle*, 741 S.W.2d 883, 885 (Mo. App.1987). We defer to the trial court and view the evidence in a manner favorable to the decree while we disregard contradictory evidence. *Wynn v. Wynn*, 738 S.W.2d 915, 918 (Mo.App.1987).

Tom and Diana were married on June 11, 1971. Apparently, Tom was still a student at the time of the marriage. Both Tom and Diana have worked toward or earned postgraduate college degrees. Two children were born of the marriage; the first, a boy, born in 1978 and the second, a girl, born in 1982. Tom began working in real estate sales in about 1978. In 1983, by mutual agreement, Diana quit working full-time to devote more time to the children. Tom went to work for Al Elam Real Estate near Lake of the Ozarks in 1985. In May of 1985, Tom, with two other individuals, formed Arrowhead Real Estate Corporation. The marriage began to deteriorate about that time.

Diana believes the breakup of the marriage was caused by Tom's drinking and infidelity. Tom asserts the marriage broke up because of a lack of a mutual respect. In either December of 1985 or January of 1986, the couple separated.

Tax records produced by Diana indicate that Tom's real estate commissions in 1983 exceeded $44,000. In 1984, Tom earned $47,112 in real estate commissions. By 1985, when the couple separated, Tom earned commissions of $72,199. In contrast, Diana earned just over $2,400 in 1983. She had no earnings in 1984 and earned $5,297 as a travel agent and cocktail waitress, working only part of the year in 1985.

On several occasions, Tom made threats that he would "... work down what we owned so that ... by the time we got a divorce there would be nothing left at all" to divide.

Diana produced evidence to the effect that Tom's work habits began to change in

1985 and 1986. During 1986, Tom began spending time out of the office traveling to Florida and making a trip to San Juan, Puerto Rico. On several occasions during 1985 and 1986, Tom traveled to St. Louis or Kansas City on weekdays and weekends. It was during the weekends that most of the real estate sales business was transacted. Tom's business associate testified that on some days, Tom would only be in for a few minutes then leave after a short period of time, and that Tom spent a great deal of time in bars as the date of the dissolution hearing approached. Diana's testimony indicated Tom spent in excess of $20,000 on travel and entertainment in 1986.

At the trial, Tom testified that he had gross income of $39,000 during 1986 and a large part of this income was a result of draws against money borrowed by his real estate company and not the result of earned commissions. Tom testified that his expenses at the time of the dissolution were approximately $2,832 a month.

Diana's evidence indicated that her circumstances since the separation had been quite difficult. She was unable to meet her regular expenses. As a result, she sought employment in St. Louis and obtained a contract with the St. Louis Special School District as a teacher during the 1986–87 school year. However, the job was only temporary with no guarantee that it would continue the following year. Her net income was approximately $1,350 per month. She and the children had moved in and were living with Diana's mother in St. Louis at the time of the trial. She testified that in order to live independently with her children, her anticipated monthly expenses would be $3,711.59. However, this amount included $362.49 on the home mortgage payment, a second mortgage payment of $224.00, a boat payment of $194.46, and real estate taxes of $58.00.

In the division of marital property, the family home was ordered sold and after the payment of the outstanding liens against the home, the proceeds were ordered divided equally. The boat was set aside to Tom, and he was ordered to pay the debt secured by the boat. The interest in Arrowhead Real Estate Corporation was set aside to him. Other specific property and debts were divided which we need not detail here. The net value of the property set aside to Tom, as determined by the trial court, was $26,742.42, less whatever income taxes Tom owed for 1985 and 1986. The net value of the property set aside to Diana was $27,040.[1] The trial court found that Tom "... has the ability to earn an income of $40,000 to $70,000 annually and that he intentionally decreased his income during 1986 and 1987 ..." The trial court ordered Tom to pay $600 per month per child as child support and $300 per month as maintenance to Diana.

The nonexclusive factors to be considered by a trial court in awarding maintenance are found in § 452.335.2.[2] The nonexclusive factors to be considered in awarding child support are found in § 452.340. One common factor considered in the award of either maintenance or child support is the husband or father's financial resources and his ability to meet his own needs. §§ 452.335.2(6) and 452.340(1) and (6).

■ Tom does not contest the authority of the court to impute income to a husband or parent who has failed to use his best efforts to gain employment suitable to his capabilities. *Klinge v. Klinge*, 554 S.W.2d 474, 476–477 (Mo.App.1977); *Foster v. Foster*, 537 S.W.2d 833, 836 (Mo.App.1976). Past, present, and anticipated earning capacity may be properly considered in determining the ability of a husband to pay maintenance or a noncustodial parent to pay child support. *Hogrebe v. Hogrebe*, 727 S.W.2d 193, 195 (Mo.App.1987); *Klinge v. Klinge, supra,* at 476.

■ Tom argues that the evidence is insufficient to support the imputation of any income to him. The evidence in this case

---

**1.** The net values do not include the proceeds of the sale of the lots sold by the parties prior to the dissolution and from which each of the parties received one-half of the proceeds.

**2.** Unless otherwise indicated, all references to statutes are to RSMo, 1986.

that Tom's average annual income from real estate commissions for the three years preceding 1986 was in excess of $50,000, coupled with his frequent absences from his place of employment and a declared intent to "work down what [was] owned" so there would be nothing left at the time of the divorce, is ample evidence to support the trial court's determination that Tom has the ability to earn substantially more than he earned in 1986. Tom stresses that 1986 was a bad year for real estate. Even assuming this was so, nothing in the record would require the court to find that such condition would continue indefinitely into the future.

Diana's financial condition is also to be considered in awarding child support and maintenance. §§ 452.335.2(1) and 452.340(3).

■ Tom argues that the expenses testified to by Diana were not actual expenses but anticipated expenses. He argues that the court should discount not only the expenses relating to the property ordered sold or debts ordered paid by him, but should also discount her anticipated rent, utility, and child care expenses. If this analysis were adopted, Diana would be penalized because she elected to temporarily accept living in the crowded and austere circumstances of her mother's home until the dissolution case is resolved. The trial court properly considered anticipated expenses for insurance, rent, and utilities. Considering that the only income-producing property of the parties was set aside to Tom and that as of the date of dissolution the total of Diana's income and the support and maintenance ordered by the court was still just short of the amount of expenses Diana claimed she needed each month, the trial court cannot be convicted of failing to consider her income and resources in reaching its decision.

■ Another factor to be considered which is common to an award of both child support and maintenance is the standard of living enjoyed by the family prior to the marital breakup. §§ 452.335.2(3) and 452.340(4). Tom suggests that the standard of living of Diana and the children was artificially high as evidenced by the indebtedness incurred during the marriage. Nothing in the record indicates that the expenses of Diana or the children were extraordinarily high for a person of Tom's means. Under the evidence the trial court could, and apparently did, conclude that the debts were in large part due to Tom's thriftlessness during the last two years of the marriage.

Other factors the trial court may have considered in awarding maintenance include: the time necessary to enable Diana to acquire the education and training necessary to find appropriate employment; Diana's age and physical and emotional condition; and Diana's conduct during the marriage. § 452.335.2(2), (5) and (7). Tom correctly points out that these factors weigh in favor of a denial of maintenance. Diana does not require additional training. She holds a master's degree in special education. She has sought and obtained appropriate employment for a person with her training, even though her income from that employment is insufficient to allow her to meet her current expenses. She is relatively young and apparently enjoys good physical and emotional health. Since the separation, Diana has kept company with a male friend, although there has been no sexual intimacy. While these factors may weigh marginally in favor of Tom's position, we cannot say with confidence that they outweigh the factors favoring an award of maintenance.

■ Tom asserts there is no evidence or, alternatively, insufficient evidence to show Diana lacks sufficient property to provide her reasonable needs or that she is unable to support herself through appropriate employment. § 452.335.1. As noted previously, Diana has obtained appropriate employment. The income from that employment and from the child support leaves her over $300 per month short of her claimed monthly expenses. The cash she will receive from the division of marital property is somewhat speculative, depending in large part on the proceeds of a court-ordered sale of the family home and some residential lots. Tom's claim of an absence

or insufficiency of evidence of Diana's inability to meet her own economic needs is without merit.

The only question remaining for determination is whether Diana has sufficient property to meet her "reasonable needs." In *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App.1977), the court stated:

> Reasonable needs as used in the statute is a relative term. In a marriage of lengthy duration where one spouse has foregone career development, the marital standard of living may serve as an important guide in computing the spouse's reasonable needs. In a very practical sense it is frequently the best evidence of what the parties have together determined their "reasonable needs" to be.

For the last three years of the marriage, Diana spent the majority of her time in the home caring for the children. She also enjoyed a rather comfortable standard of living. Tom did not suggest at trial or in argument on appeal that her anticipated living expenses were excessive or unreasonable. In fact, he claimed living expenses of a similar amount.

We find there was substantial evidence supporting the trial court's award of maintenance and support. Consequently, there was no abuse of discretion in granting such relief. *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 66 (Mo. banc 1983). The judgment of the trial court is affirmed.

CROW, C.J., and GREENE, P.J., concur.