**Mary Frances KECK, Respondent,**

v.

**Harold Wallace KECK, Appellant.**

**No. WD 44230.**

Missouri Court of Appeals,
Western District.

Dec. 17, 1991.

Errol D. Taylor, St. Joseph, for appellant.

Thomas R. Summers, St. Joseph, for respondent.

Before FENNER, P.J., and
LOWENSTEIN, C.J. and ULRICH, J.

LOWENSTEIN, Chief Judge.

The facts in this motion to modify child support are fairly straight forward: the appellant Harold and Mary had a daughter, Kristin, now nineteen and a younger son, John, now fifteen. Harold, age 51, had been an airline pilot all his life. In June of 1985, Harold and Mary separated. Harold had some twenty-four years' seniority at Eastern Airlines in March, 1989, when the machinists of that company went on strike. At that time Harold was taking home some $5800 a month. He honored the strike and was paid benefits by the pilots' union. During the strike, which lasted until 1990, Eastern offered any pilot his job back, but with a 25% pay reduction. Harold refused. The strike ended and Eastern chose not to rehire most of the pilots, including Harold, who then retired in February, 1990, taking with him substantial benefits which were divided by the court between him and Mary. The evidence was uncontested that because of his age, Harold would not be

hired by any other carrier—he took a job co-piloting a commuter aircraft for Air Midwest at $1025 a month. He made repeated unsuccessful attempts for employment with other airlines. If promoted to captain at Air Midwest he could earn $25,000 to $30,000 yearly. Harold has remarried.

As pertinent here, two orders followed, including the December 1990, order which is the subject of this appeal by Harold.

### April 1989 Order

The marriage was dissolved following a 1986 decree of separation. The Eastern strike was pending and Harold's monthly take home pay had gone from $5800 to $5300, and it was contemplated his pay might go down even more. The order acknowledged Harold's stipulation to help pay the oldest child, Kristin's, college expenses starting in September of 1989. The order set maintenance at $1,000, monthly child support at $700 and at least $700 a month for Kristin's college starting in September.

### Final Order December 1990

In this order the court found Harold had worked as a co-pilot for Air Midwest since June 1990 at a gross annual salary of approximately $12,300, "with an assurance of an increase to $30,000 annually after one year of service." The court noted he has sought without success a higher paying job, but the "relatively low income ... is only temporary ..." and Harold "has an income capability of at least $30,000 per year." The court found he had $24,000 annual interest income from the sum of $270,000 Harold acquired from Eastern as retirement benefits. It further found Harold's new wife had a $22,000 a year salary as an art instructor, and this income as such is able to assist Harold in meeting "joint living expenses." Mary makes $21,-000 as a school teacher and earns $7,000 in interest from her portion of Harold's retirement benefits (however there is a penalty for withdrawal).

The order further determined Harold "makes Sixty-six (66) per cent of the parties' total gross income including his in-come capability and the parties' interest income ..." and he should pay 66% of his daughter Kristin's college expenses up to $5,280 a year. The court terminated the previous order of $1,000 per month maintenance to Mary. The net result is Harold must continue to pay $700 a month support for son John and up to $440 a month for nineteen-year-old Kristin's college expenses.

This appeal really turns on Harold's taking umbrage with the result in which he is grossing about $1,024 a month from work yet has monthly support of $1140 ($700 + $440). The court attributed to Harold the amount of $30,000 salary which he hoped to have within the year as opposed to his actual salary. In fact this order replaced a disavowed earlier award which based support on the imputation of income to Harold of $3750 a month, that amount he would have made had he crossed the picket line and returned to Eastern. The trial court determined Harold's conduct vis-a-vis the strike was a protected activity. *W–I Canteen Service, Inc. v. NLRB*, 606 F.2d 738 (7th Cir.1979).

Following the Eastern experience, the evidence was clear that Harold had made extensive efforts to fly for some other airlines, but was unable to do anything other than get on with Midwest.

■ Harold does not complain at the amounts arrived at under the guidelines of presumed support, Rule 88.01 and § 452.-340, so much as the amount of income ascribed to him and his ability to pay as being an abuse of discretion. *Weston v. Weston*, 768 S.W.2d 588 (Mo.App.1989).

This case presents another classic example of too little money after a dissolution and too many justifiable needs. The trial court has recognized Harold's steady and precipitous decline in income, and his agreement to pay for Kristin's expenses at college where she is an honor student. *May v. May*, 801 S.W.2d 728, 732 (Mo.App. 1990). The children's needs continue, and Harold's age and the turbulence in the airlines industry make his employment situation precarious.

Though the issue of imputing full income (or the 25% lesser Eastern income) is not here an issue, the court would still point out that Harold has not, as did the father in *Devries v. Devries*, 804 S.W.2d 825, 827 (Mo.App.1991), voluntarily put himself in the position of diminishing his income without justifiable explanation. The father's diminished income in this case would have reduced the standard of living "whether or not the marriage had been dissolved." *Brandt v. Brandt*, 794 S.W.2d 672, 674 (Mo.App.1990). Harold did not voluntarily decline to work and then plead lack of income as an excuse for not contributing toward his children's support. *Overstreet v. Overstreet*, 693 S.W.2d 242, 245 (Mo. App.1985). Similarly, the father's income here had not been manipulated, nor was it artificially low, *Riaz v. Riaz*, 789 S.W.2d 224, 228 (Mo.App.1990), nor has he lagged at Air Midwest to avoid a promotion to captain and the higher salary. The only evidence on the matter of promotion was based in great part on seniority, and that there were pilots scrambling for fewer remaining jobs. It cannot be said the father's situation here is a temporary fluctuation in the parent's fortune. *Davidson v. Davidson*, 786 S.W.2d 186, 187 (Mo.App. 1990).

Even though income can be imputed to a father for the children's best interest, such must be in the father's capacity to earn, *Forhan v. Forhan*, 693 S.W.2d 164, 166 (Mo.App.1985). The father here sought employment from all available sources, *Langdon v. Langdon*, 792 S.W.2d 645, 649–50 (Mo.App.1990). The sum accrued by factoring in $30,000 of income to Harold goes beyond his expected ability to pay. *Hopkins v. Hopkins*, 664 S.W.2d 273, 274 (Mo.App.1984). Section 452.340.1, *supra*. The trial court's basing support for the son and Harold's share of Kristin's college expenses on an income of $30,000 was an abuse. Within the confines of Harold's motion to modify there was no evidence of an impending promotion and increase in pay. *Cf. Sutton v. Sutton*, 801 S.W.2d 704, 706 (Mo.App.1990). Under the law the court can consider Harold's wife's income in meeting monthly expenses. The court was allowed to count Harold's income derived from the retirement funds from Eastern.

This court is not unmindful of Judge Jackson's efforts under the circumstances, but must reverse and remand the matter for a recomputation of a judgment based on Harold's income at trial. *Parker v. Parker*, 744 S.W.2d 469, 472–73 (Mo.App. 1988).

Costs to be divided equally.