STATE of Missouri, ex rel. O.A. by Christine S. ATKINSON as next friend, and Christine S. Atkinson, Respondent,

v.

Dennis R. ANTHONY, Appellant,

and

Orville A. Atkinson, Defendant.

No. WD 53411.

Missouri Court of Appeals, Western District.

June 30, 1997.

Michelle L. Polly–Murphy, Kansas City, for Respondent.

Charles A. Kellogg, Independence, for Appellant.

Before ULRICH, C.J., P.J., and LOWENSTEIN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Dennis R. Anthony appeals a judgment of the Circuit Court of Jackson County in a paternity action under the Missouri Uniform Parentage Act awarding, *inter alia,* child support and retroactive child support to Christine S. Atkinson, respondent, for the parties' minor child. In his sole point on appeal, appellant alleges that the trial court erred in imputing income to him in calculat-ing the correct child support amount he should pay.

We affirm.

### Facts

While Christine S. Atkinson was married to Orville A. Atkinson, she entered into a sexual relationship with Dennis R. Anthony and conceived a child. On April 26, 1993, while still married, respondent gave birth to O.A. On October 11, 1995, respondent, joined by the State of Missouri, filed a combined petition for declaration of paternity and an order of support. Because O. A.'s paternity had not yet been established and respondent was married to Mr. Atkinson at the time O.A. was born, both Mr. Atkinson and appellant were named as parties.

Appellant filed a motion for blood testing, which revealed that there was a 99.92% prob-ability that he was O. A.'s father. On September 9, 1996, a hearing was held in the Circuit Court of Jackson County before Family Court Commissioner Sherrill L. Rosen. The parties stipulated that appellant was O. A.'s father; his name would be added to her birth certificate; and, he would pay child support of $440 per month, with retroactive child support totaling $3,136. However, during the hearing, appellant retracted the portion of the stipulation concerning child support and retroactive child support, claiming that his recent heart attack might prevent him from being employed such that he would be financially unable to make the agreed upon child support payments. As a result, a contested hearing on the issue of child support was necessitated.

At the hearing, appellant testified that following a heart attack and hospitalization in June, 1996, he had been fired from his last employment at Machinery Spare Parts. He offered no documentation or medical testimo-ny concerning his heart attack. While at Machinery Spare Parts he made $2,044 per month. Appellant testified that because of his heart condition he could no longer maintain his previous type of employment, but thought he could work at a minimum wage job, although he had not sought other employment after being fired from his last job.

He further testified that he had not applied for any unemployment or disability benefits, but planned to do so. Appellant also testified that in August, 1996, he traveled by motorcycle to South Dakota for a four-day visit. Respondent did not present any evidence of appellant's physical condition or his skills, ability to earn or prevailing job conditions.

After hearing evidence, the trial court declared, *inter alia*, the appellant to be the natural father of O.A. In determining the presumed correct child support amount (PCCSA), the trial court did its own Form 14 calculation, imputing income to appellant of $2,044 per month. The trial court's Form 14 showed that the PCCSA was $491 per month. Based on this amount, the trial court also awarded respondent retroactive child support in the amount of $2,946.

This appeal follows.

## Standard of Review

■■■ An award of child support is within the sound discretion of the trial court. The trial court's ruling with regard to such issue will be affirmed unless it is unsupported by substantial evidence, unless it is against the weight of the evidence, or unless it misstates or misapplies the law. Great deference is awarded the trial court in determining the witnesses' credibility due to their [sic] superior ability to view their demeanor while testifying. Absent a manifest abuse of discretion, appellate courts will not substitute their judgment for the trial court's. The trial court's award of support will not be disturbed unless the evidence is "palpably insufficient" to support it. (citations omitted).

*Elliott v. Elliott,* 920 S.W.2d 570, 574 (Mo. App.1996).

## I.

In his sole point on appeal, appellant alleges that the trial court erred in imputing income to him when it calculated the correct child support he should pay. He contends that the imputation of income to him in calcu-

lating child support was against the weight of the evidence, in that the court did not consider evidence that he is presently unemployed and physically unable to work, and that it improperly referred to his failure to apply for unemployment and disability benefits as an indication of his lack of credibility.

As required, the trial court here determined the PCCSA pursuant to Rule 88.01, Form 14 and § 452.340.7[1] by doing its own Form 14 calculation, which imputed income to appellant in the amount of $2,044 per month. *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997); *Woolridge v. Woolridge,* 915 S.W.2d 372, 381–82 (Mo.App.1996). The issue presented here is whether the evidence supports the amount of income imputed to appellant in the trial court's Form 14 calculation of child support. This, then, is a Form 14 issue of "rejection," rather than "rebuttal." *Woolridge,* 915 S.W.2d at 379.

■■■ The procedure courts must follow in the imputation of income has been succinctly stated as follows:

In determining the financial condition of the father at the time an award is made, consideration may be given to his past and present earnings and his anticipated future earning capacity. *Mueller v. Jones,* 583 S.W.2d 222, 224 (Mo.App.1979), *Murray v. Murray,* 538 S.W.2d 587, 589 (Mo.App. 1976); *In re Marriage of Vanet,* 544 S.W.2d 236 (Mo.App.1976); *Tatham v. Tatham,* 657 S.W.2d 717, 719 (Mo.App. 1983); *Nunn v. Nunn,* 644 S.W.2d 370, 372 (Mo.App.1982). He may not escape his responsibility by voluntarily declining to work, *Boyer v. Boyer,* 567 S.W.2d 749, 751 (Mo.App.1978), by deliberately limiting his work to reduce his income, *Butler v. Butler,* 562 S.W.2d 685, 687 (Mo.App.1977), *Goodwin v. Goodwin,* 746 S.W.2d 124 (Mo. App.1988), or by otherwise disabling himself financially. *Smith v. Smith,* 558 S.W.2d 785, 789 (Mo.App.1977). A court may, in proper circumstances, impute an income to a husband according to what he could have earned by the use of his best efforts to gain employment suitable to his capabilities. *Foster v. Foster,* 537 S.W.2d

1. All statutory references are to RSMo 1994, unless otherwise indicated.

833, 836 (Mo.App.1976); *Overstreet v. Overstreet,* 693 S.W.2d 242 (Mo.App.1985). See also *Morovitz v. Morovitz,* 743 S.W.2d 893 (Mo.App.1988).

*AlSadi v. AlSadi,* 823 S.W.2d 123, 126 (Mo. App.1992), citing MoBar CLE, Family Law, Child Support Maintenance, § 14.7. The directions for completion of Form 14 embody these principles:

> [C]hild support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court or administrative agency may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community. . . .

Civil Procedure Form No. 14. Although a court is permitted to impute the income to a parent that he or she earned in the past, an award of child support must always be supported by evidence of the parent's ability to pay. *Walker v. Walker,* 936 S.W.2d 244, 248 (Mo.App.1996). "Proof that a parent has previously made more money . . . is not alone a sufficient basis upon which to impute income at those levels," as the amount imputed must be based on the types of evidence discussed in the Form 14 instructions. *Id.*

In deciding the issue presented, we view the evidence favorable to the trial court's imputation of income to appellant in its Form 14 calculation. The record reflects that the appellant had recently been employed making $2,044 per month. He testified he was fired because he could no longer do his job because of his heart attack. He offered no documentation or medical testimony concerning his heart condition. The trial court found from the evidence that he voluntarily quit, rather than being fired, and questioned the lack of medical evidence on his heart condition. When asked if he had sought employment since his last job, he answered no. Although he claimed that he could not hold similar employment to his past employment because of his heart condition, he testified he thought he could hold a minimum wage job. When asked if he had made application for unemployment and disability benefits, he an-

swered no, but that he planned to make application in the future. Although he had ample opportunity, he did not state that the reason he had not made application was because he was not entitled to any benefits, as he now claims in arguing that the trial court improperly considered his failure to make application for benefits in judging his credibility.

Because the trial court was free to believe or disbelieve appellant's testimony, we find the foregoing evidence, to which we have referred, *supra,* is sufficient to support its imputation of monthly income to appellant in the amount of $2,044 in its Form 14 calculation. Thus, inasmuch as appellant does not otherwise challenge the award of child support and retroactive child support, except on the basis that the trial court erred in imputing income to him, we find his claim of error to be without merit.

Point denied.

## Conclusion

The trial court's judgment, *inter alia,* awarding child support is affirmed.

All concur.