Stephanie Ann HECK, Respondent,

v.

Douglas S. HECK, Appellant.

No. WD 71642.

Missouri Court of Appeals, Western District.

Aug. 24, 2010.

John R. Shank, Jr., and Ryan J. Springer, Kansas City, MO, for appellant.

Michael L. Taylor and Benjamin S. Creedy, St. Joseph, MO, for respondent.

Before Division One: JAMES M. SMART, JR., Presiding Judge, MARK PFEIFFER, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Douglas Heck ("Father") appeals from the trial court's judgment dissolving his marriage to Stephanie Heck ("Mother").

Father contends that the trial court erred in: (1) calculating his child support obligation because the trial court's imputation of annual income of $100,000 to Father was not supported by substantial evidence, and (2) awarding Mother both retroactive child support and a monetary judgment for a past due child care bill because child care expenses were already included in calculating the retroactive child support amount. We affirm.

## Factual and Procedural History

Mother and Father were married on July 18, 1998, and separated on October 15, 2008. They have three children. Mother filed a petition for dissolution of marriage on March 5, 2009, followed by Father's answer and counter-petition. Prior to trial, the parties resolved all issues except child support, retroactive child support, and a past due child care bill. On September 3, 2009, the trial court heard evidence on these unresolved issues.

Father has a banking and finance degree from the University of Missouri.[1] Father worked in the mortgage and life insurance industries for years and acquired an insurance broker's license. Though Father has been a licensed insurance agent for fifteen years, he has chosen not to be active in that field. During the eleven year marriage, Father usually earned over $100,000 a year and sometimes as much as $200,000 a year. Father testified that he owned a mortgage company from 2002–2008. Per income tax returns, Father's gross income in 2008 was $99,758 and $126,234 in 2007. Father offered no credible evidence of his income in 2009.

At the time of trial, Mother was employed at the Weston Family Clinic.

Mother's gross monthly income was $1,690. Mother testified that she lost a higher paying job as a result of Father's harassing conduct, including: repeatedly driving by Mother's workplace; disconnecting Mother's battery cables; and putting a mixture of Vaseline, mustard, brown sugar, and sardines on the doors and sidewalks at Mother's workplace. Mother was required to seek an order of protection against Father because of the harassment. After Mother filed for an order of protection, Father sent Mother threatening text messages, including a message which advised Mother to "say good bye" if she did not drop the request for the protection order, and another which warned "if you were to win once-zero chance you would live through the night." The trial court issued an order of protection on March 9, 2009. Among other things, the order of protection expressly prohibited Father from dissipating assets.

Notwithstanding the order of protection, Father depleted the children's MOST accounts, intended for use toward the cost of the children's education. Each of the three accounts contained approximately $10,000. Father also continued his intimidation and harassment of Mother. Father advised Mother that he intended to work as little as possible during the pendency of the dissolution proceedings so that his income would be minimized. Father specifically advised Mother he was going to "chill" until the dissolution was over. Through a steady stream of email and text messages, Father expressed that he was hiding assets and that he was prepared to do whatever was necessary to avoid obligations such as child support. Father's messages included:

---

1. We view the evidence in the light most favorable to the trial court's judgment and defer to the trial court's credibility determinations. *Potts v. Potts,* 303 S.W.3d 177, 184 (Mo.App. W.D.2010).

- On April 30, 2009, Father sent Mother a text message stating that for their daughter's gymnastics bill, "tell Hannah no gymnastics today" and that if Mother would drop the order of protection against Father, he would try to get the gymnastics money.
- On May 1, 2009, Father sent a message saying, "I have $50,000 hiding and I won't give you a dime until you remove the order." Father's demand to remove the order was repeated fourteen times in all capital letters.
- On May 2, 2009, Father sent Mother a text message saying, "You will get so little child support because I will hide whatever I have. Remember, I am smarter than you, dumbass. You will have money to buy them clothes at garage sales." On that date, Father also sent Mother a photograph of a number of $100 bills while claiming he had no money.
- Father sent Mother a photograph on May 9, 2010, via email which showed stacks of money lying on a table.
- On May 31, 2009, Father sent Mother another text message saying, "I will be laughing when you file bankruptcy, and I have all of our retirement."
- On June 6, 2009, Father sent Mother a message stating, "When you are broke, I will take the kids."
- On June 8, 2009, Father sent Mother a text message stating, "If you get sole custody, you'll never live through the night."
- On June 10, 2009, Father sent Mother a text message saying "You are out-earning me, according to my documents, and no one will know the difference—no one will no different."
- On June 10, 2009, Father also stated that "I'm looking forward to watching you work your fingers to the bone while I enjoy our children."
- On June 10, 2009, Father sent Mother a text message demanding that Mother drop the order of protection and saying, "My answer is no 100 percent of the time. It does not matter the question." This was during a time when Mother was in desperate need of money and had asked Father for help.
- On June 12, 2009, Father sent Mother a text message saying that "You will care when you can't pay your utilities and buy a cheeseburger and don't have time to see your kids."
- On June 26, 2009, Father sent Mother a message saying, "I will ruin you and your future."

Father sent all of these messages to Mother while the order of protection prohibiting Father from having any contact with Mother was in place.

On September 18, 2009, the trial court issued its judgment. The trial court found the presumed child support amount pursuant to section 452.340.8,[2] Rule 88.01, and as calculated by Form 14 to be $1,830 per month. The trial court found that this presumed amount had not been rebutted as unjust and inappropriate. The trial court made the child support award retroactive to March 5, 2009, (the date Mother filed for dissolution) because Father had provided little to no financial support to Mother during the pendency of the dissolution proceedings.

The trial court noted the parties had a debt for an unpaid child care bill in the amount of $1,900. The trial court found that it was appropriate to set responsibility for payment of this debt off to Father. The trial court thus entered a judgment in Mother's favor in the amount of $1,900.

Father appeals.

2. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

### Standard of Review

■■■ " 'In a court-tried case, the decree of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.' " *Potts v. Potts*, 303 S.W.3d 177, 184 (Mo.App. W.D.2010) (citation omitted). We view the evidence in the light most favorable to the trial court's judgment and defer to the trial court's credibility determinations. *Id.* The trial court is free to believe none, part, or all of the testimony of any witnesses. *Id.* " 'We presume that the trial court took into account all evidence and believed such testimony and evidence that is consistent with its judgment.' " *Id.* (citation omitted). The burden of proof is on the party challenging the trial court's judgment in a dissolution of marriage to demonstrate error. *Id.*

### Analysis

### Point I

■■■ In his first point on appeal, Father contends that the trial court erred in calculating his child support obligation in that the trial court imputed annual income to Father in the amount of $100,000. Father claims the amount of imputed annual income was not supported by substantial evidence. Specifically, Father complains that the trial court improperly imputed income relying on his past income from a failed business venture. We disagree.

■■■ A two-step procedure is used by the trial court to determine child support awards pursuant to section 452.340 and Rule 88.01. *Id.* at 194. First, the trial court must determine the presumed child support amount pursuant to Form 14. *Id.* Section 452.340 sets forth the factors to be considered by the trial court in determining child support. Relevant to this case, those factors include the financial needs and resources of the parents.

Second, the trial court must determine whether to rebut the presumed child support amount as being unjust or inappropriate. *Potts*, 303 S.W.3d at 194. Rule 88.01 provides that there is a rebuttable presumption that the amount of child support calculated pursuant to Form 14 is correct unless after consideration of relevant factors, the amount is unjust or inappropriate.

■■■ To determine whether the presumed child support has been calculated correctly, the trial court is to be guided by Directions and Comments for Use of Form 14 and the evidence of the case. *Potts*, 303 S.W.3d at 194. The Directions and Comments for Use and Examples for Completion of Form 14 provide that a parent's gross income may be based on imputed income if the parent is unemployed or found to be underemployed. Comment H to Line 1 provides that when determining whether to include imputed income, and if so, the amount, the trial court shall consider all relevant factors including: (1) the parent's probable earnings based on the parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods; (2) the parent's occupational qualifications; (3) the parent's employment potential; (4) the available job opportunities in the community; and (5) whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

The theory behind imputing income to a spouse/parent is directed toward preventing a spouse from escaping responsibilities to the family by deliberately or voluntarily reducing his or her income.

Imputation of income is proper where a parent has voluntarily reduced his or her income without justification. The most common scenario for voluntary reduction of income without justification is where a parent deliberately quits work to reduce his or her child support.

*Cross v. Cross,* 318 S.W.3d 187, 192 (Mo. App. W.D.2010) (citation and internal quotation marks omitted); *See also Sherman v. Sherman,* 160 S.W.3d 381, 384–85 (Mo. App. W.D.2004).

■ Here, the trial court found that the presumed child support amount as calculated by Form 14 should be $1,830 and that this amount had not been rebutted as unjust and inappropriate.[3] The trial court found that Father had intentionally reduced his income in anticipation of the divorce, that he had threatened to hide and dispose of assets, and that he had dissipated assets. The trial court found that Father earned $126,234 in 2007 and $99,758 in 2008, and that he had produced *no credible evidence* of his actual income from 2009. The trial court found that Father has the ability and income earning potential to earn the sum of at least $100,000 annually ($8,333 per month) and imputed such as his income. The trial court stated that "after observing and considering the parties' sworn testimony and after careful review of admitted exhibits ... that [Father] repeatedly was untruthful and engaged in numerous, intentional falsehoods and clearly reflected a propensity for lying such that the Court places virtually no weight upon [his] testimony."

The trial court's findings were supported by substantial evidence. Mother testified that Father's reported earnings were $126,234 in 2007 and $99,758 in 2008.[4] A trial court may use a party's tax returns to determine income for purposes of calculating child support. *Potts,* 303 S.W.3d at 194. Mother testified that Father has a banking and finance degree, that Father has been working in the mortgage and life insurance industries for years, and that Father has an insurance broker's license. Father testified that he intended to pay off debt he had accumulated totaling over $550,000, indicating he expects to earn income. Mother testified that Father intentionally reduced his work hours and the attention paid to his business in anticipation of the divorce. Further, Father repeatedly threatened to hide and dispose of marital assets and to manipulate the dissolution proceedings to demonstrate a lower income. This evidence provides substantial evidence from which the trial court could conclude that Father was not prevented from meeting his earning potential due to forces beyond his control. Rather, Father purposefully engaged in conduct designed to avoid meeting his earning potential for the express purpose of manipulating the calculation of child support.

This case is very similar to *AlSadi v. AlSadi,* 823 S.W.2d 123, 126 (Mo.App. S.D. 1992). In *AlSadi,* the evidence supported the trial court's imputation of income to husband, notwithstanding the fact husband claimed to have been "laid off" from his

---

3. We note that Father failed to include Form 14 in the legal record as required by Rule 81.12(c), instead including it in his appendix. Documents in an appendix to an appellate brief that are not contained in the record on appeal are not appropriately before this court for consideration. *Washington v. Blackburn,* 286 S.W.3d 818, 822 (Mo.App. E.D.2009).

4. Although not raised in his brief, at oral argument, Father argued that Mother only offered evidence regarding his gross income as opposed to his adjusted gross income. However, Father conceded that the amount imputed to him was within the range of the adjusted gross incomes in the tax returns that were exhibits at trial. As such, we find no error.

former position as an instrument technician due to a labor force reduction. *Id.* at 125. Husband also claimed a recent surgery impaired his future ability to work. *Id.* The trial court heard evidence suggesting that husband withheld child support during the pendency of the dissolution to attempt to coerce wife into a property settlement agreement. *Id.* at 126. Further, there was no evidence offered to the trial court suggesting husband had meaningfully sought employment utilizing his skills. *Id.* The court concluded that "[f]rom this and other evidence the trial court could draw an inference adverse to the Husband concerning his efforts to find more remunerative employment and that he was underemployed." *Id.* Importantly, the court held that a parent cannot escape responsibility for child support by "voluntarily declining to work," *id.* (*citing Boyer v. Boyer,* 567 S.W.2d 749, 751 (Mo.App. W.D.1978)), or by "deliberately limiting his work to reduce income." *Id.* (*citing Butler v. Butler,* 562 S.W.2d 685, 687 (Mo.App. E.D.1977)) (holding reasonable inference that husband did not use best efforts to find more lucrative employment where husband withheld child support payments until ordered to do so and offered no evidence that he sought employment to utilize his skills).

Similarly, in *Goodwin v. Goodwin,* husband argued there was insufficient evidence to support imputing income to him. 746 S.W.2d 124, 126 (Mo.App. S.D.1988). Husband was in the real estate business, and the evidence indicated he had average annual commissions of in excess of $50,000 a year in the years preceding the dissolution. *Id.* at 127. In addition, the trial court heard evidence that husband was frequently absent from work immediately preceding the dissolution and that husband had "a declared intent to 'work down what [was] owned' so there would be nothing left at the time of the divorce." *Id.*

Though husband stressed that the year of the dissolution was "a bad year for real estate," *id.,* the trial court's judgment imputing income was nonetheless supported by substantial evidence on this record. *Id.* Importantly, the trial court was not obligated to presume that any claimed down turn in the real estate market "would continue indefinitely into the future." *Id.*

■ Father relies on *Buchholz v. Buchholz,* 166 S.W.3d 146 (Mo.App. S.D. 2005), for the proposition that proof of a previous higher income *alone* is not a sufficient basis on which to impute income for child support calculation. Father claims that, just as in *Buchholz,* the evidence at trial was that his business had failed and that there was no evidence presented regarding positions for him in the community. *Id.* at 153–54. Father argues that, just as in *Buchholz,* Mother failed to prove that he had either failed to make a good faith effort at obtaining alternate employment or that he could generate the amount of income imputed to him. *Id.* at 154. Father's reliance on *Buchholz* is misplaced. The court in *Buchholz* expressly distinguished its holding from a situation where there is " 'evidence to support a finding that the parent is deliberately limiting his or her work to reduce income.' " *Id.* at 156 (*quoting Davis v. Dep't of Soc. Serv.,* 21 S.W.3d 140, 141 (Mo.App. W.D. 2000)). Of course, the evidence presented to the trial court in this case demonstrated that Father engaged in precisely such conduct. A trial court is free to impute income where the record establishes an attempt to evade parental responsibilities. *See, e.g., Honderick v. Honderick,* 984 S.W.2d 205, 212 (Mo.App. W.D.1999); *State ex rel. Atkinson v. Anthony,* 947 S.W.2d 832, 834–35 (Mo.App. W.D.1997). Mother was not obliged to prove that Father could generate the amount of income imputed to him when Father's conduct and

words provided all of the proof the trial court needed that Father was purposefully underemployed.[5]

The trial court's imputation of income to Father was supported by substantial evidence. Point one is denied.

## Point II

In point two, Father contends that the trial court erred in awarding both retroactive child support and a monetary judgment for the past due child care bill. Father argues that he was held liable on the same debt twice because child care expenses were included in the child support calculation which was then applied retroactively. We disagree.

At the beginning of trial, the parties advised the trial court that all issues were resolved except child support, retroactive child support, and a debt for a past due child care bill. Mother testified that this debt was in the amount of $1,900 and asked the trial court to make the debt Father's responsibility. Father testified that the debt was in dispute, but that he nonetheless believed it would be fair for the trial court to impose responsibility for payment of the debt on him.

Though Mother was obviously seeking an award of retroactive child support from Father, and though the evidence before the trial court for purposes of calculating child support included evidence of the cost of child care, Father never advised the trial court that he believed the unpaid child care bill would be duplicated if retroactive child support was awarded. "Even in a court-tried case, where a post-trial motion is not necessary to preserve an *otherwise properly raised issue* for appellate review, the appellant must make some effort to bring the alleged error to the trial court's attention." *McMahan v. Mo. Dep't of Soc. Servs. Div. of Child Support Enforcement*, 980 S.W.2d 120, 126 (Mo.App. E.D.1998) (emphasis added.) "With only rare exceptions, an appellate court will not convict a trial court of error on an issue that was never presented to the trial court for its consideration." *Id.* at 126–27; *see also SD Invs., Inc. v. Michael–Paul, L.L.C.,* 90 S.W.3d 75, 84 (Mo. App. W.D.2002); *Scism v. Scism,* 844 S.W.2d 506, 507 (Mo.App. E.D.1992). Because Father did not raise the prospect of a duplicative award with the trial court, the trial court was not given an opportunity to correct any claimed mistake, and this issue has not been preserved for our review.

Father relies on Rule 78.07(b) to relieve him from responsibility for failing to preserve this issue for appellate review. Rule 78.07(b) provides that in a non-jury case, neither a motion for new trial nor motion to amend the judgment is required to preserve any matter for appellate review. Father's reliance on Rule 78.07(b) misses the point. It is not Father's failure to file a motion for new trial or to amend the judgment that renders unpreserved the issue raised in Father's second point relied on. Rather, it is Father's failure to point out during the course of trial that the unpaid child care bill would be duplicated by an award of retroactive child support

---

5. Father relies on several additional cases where there was insufficient evidence for the imputation of income. However, these cases either lacked evidence that the parent to whom income was imputed voluntary diminished his or her income, or lacked sufficient evidence to support the amount of the income imputed. *Keck v. Keck,* 820 S.W.2d 727 (Mo. App. W.D.1991); *Garrison v. Garrison (In re the Marriage of Garrison),* 846 S.W.2d 771 (Mo.App. S.D.1993); *Sherman v. Sherman,* 160 S.W.3d 381 (Mo.App. W.D.2004); *Jensen v. Jensen,* 877 S.W.2d 131 (Mo.App. E.D. 1994).

which has relegated this issue to one unpreserved for appellate review. This conclusion is even more appropriate where, as here, Father affirmatively advised the trial court that he believed he should be assessed responsibility for payment of the unpaid child care bill. *Pickering v. Pickering*, 314 S.W.3d 822, 834–35 (Mo.App. W.D.2010) (in court tried case where no Rule 78.07(b) post-trial motion is required, an argument still must have been raised with trial court to preserve substantive issue for appellate review, particularly where party has specifically requested the trial court to order that about which the party now complains.)

Even had Father preserved this argument for our review, Father would not prevail. The record is void of any evidence indicating when the unpaid child care bill was incurred. It does not appear that the bill was admitted as an exhibit at trial, and if it was, Father has not in any event made the bill available to this court for its review. We cannot determine from the record, therefore, whether the unpaid child care bill was incurred during the same period for which retroactive child support was awarded.[6] As such, Father has not demonstrated even the threshold of evidence that would have been required to establish that the unpaid child care bill was duplicated by the award of retroactive child support.[7]

Point two is denied.

6. Father and Mother had been separated since October 15, 2008, but Mother did not file for dissolution until March 5, 2009. Retroactive child support was awarded to March 5, 2009. It is entirely possible that the unpaid child care bill was incurred during the period of the parties' separation and before the dissolution was filed.

7. At oral argument, Father asserted that the trial court found that the unpaid child care

## Conclusion

We affirm the trial court's judgment.

All concur.

bill was for services during the pendency of this action. However, the judgment makes no such finding. The trial court found "[t]he parties have a child care debt of $1,900. Based on [Father's] failure to provide financial assistance to [Mother] and the minor children during the pendency of this cause, and [Father's] greater income earning potential, it is appropriate that this debt be set off to [Father]."