

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| BETHANY D. HARRIS, | ) | |
| | ) | |
| Respondent, | ) | WD84946 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | November 8, 2022 |
| DOUGLAS L. HARRIS, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Moniteau County, Missouri**
The Honorable Aaron John Martin, Judge

Before Division Four: Gary D. Witt, Chief Judge, Presiding, Mark D. Pfeiffer, Judge and
Louis Angles, Special Judge

Douglas Harris ("Husband") appeals the judgment of the Circuit Court of Moniteau County, Missouri ("trial court"), granting the parties dissolution of their marriage; dividing their marital property; ordering Husband to pay child support and maintenance to Bethany Harris ("Wife"); and providing a parenting plan for the parties and their six minor children. On appeal, Husband claims that the trial court erred in: (1) awarding child support based on an improper imputation of income to Husband; (2) awarding child support in that the amount ordered exceeded his ability to pay; (3) finding that Wife had no income for

purposes of calculating child support in that the trial court should have counted the earned income tax credit as income to Wife; (4) awarding Wife maintenance because the earned income tax credit should have been counted as income to Wife, and the amount of maintenance awarded exceeded Husband's ability to pay; and (5) valuing the marital home and awarding it to Wife instead of accepting Husband's higher valuation and awarding the home to Husband. We affirm the judgment of the trial court.

## Factual and Procedural Background

Husband and Wife were married October 3, 1999. Husband and Wife separated on approximately November 2, 2020, and Wife filed for divorce. During the marriage, Husband and Wife had eight children, two of which are emancipated. By agreement between Husband and Wife, during the marriage Wife stayed home with the children and cared for them and home-schooled them. Wife has not been employed outside the home since she held a part-time job in 2002. At the time of trial, six of the children remained unemancipated and were between the ages of one and fourteen. The parties stipulated that Wife would have sole legal and physical custody of the unemancipated children, and Husband would have limited visitation with the children. Husband objected to Wife having sole decision-making authority as to medical care for the children as he did not want to be financially responsible for whatever Wife may choose to decide for the children.

Wife did not earn any significant income during the marriage because she was caring for the children. Husband worked at multiple different full- and part-time jobs during the marriage including self-employed construction, lawn care service, fencing installation, and automobile mechanic. At the time of trial Husband was employed at an

2

automobile dealership, and his gross monthly income was $3,900 per month. During the course of the marriage Husband regularly worked multiple jobs, sometimes as many as three to four at one time, providing for the family. Husband earned as much as $10,829 per month at times. At around the time of the separation, Husband changed his employment, and at trial he testified that he is no longer willing to work multiple jobs to support Wife and their children. Even though Husband testified he was going to sell his lawn care business to his father, the trial court found that he would continue to receive substantial income from this business and found his father's running of the business may be temporary based on prior times when Husband had changed jobs. The trial court found Husband to be intentionally underemployed and imputed income to Husband at $8,000 per month.

The trial court found the Form 14 presumed child support amount to be $2,252 per month, found that amount not to be unjust and inappropriate, and ordered support to be paid by Husband to Wife in that amount. The trial court found that Wife was not able to support herself based on her limited education and work experience as well as her responsibility to care for six small children and home-school them, and it found that Husband had the ability to provide maintenance to Wife and ordered modifiable maintenance in the amount of $1,700 per month.

Wife's real estate expert valued the marital home at $179,000. Husband did not call an expert but testified his opinion that the home should be valued at $240,000 and asked that the home be awarded to him at that value. The trial court found the value of the home to be $179,000 subject to a mortgage of $78,675.99. The home was awarded to Wife as

well as the obligation to pay the mortgage thereon.  The trial court issued its judgment, and this appeal follows.

## Standard of Review

"We will affirm the [trial] court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Sparks v. Sparks*, 417 S.W.3d 269, 280 (Mo. App. W.D. 2013).  We review the evidence in the light most favorable to the trial court's judgment and defer to the trial court's credibility determinations.  *Heck v. Heck*, 318 S.W.3d 760, 764 (Mo. App. W.D. 2010). This is so "even if the evidence could support a different conclusion because the trial court is in a better position to judge witness credibility, sincerity, character[,] and other intangibles not revealed in a transcript." *Taylor v. Taylor*, 12 S.W.3d 340, 344 (Mo. App. W.D. 2000).  "The trial court's decision regarding maintenance will not be reversed absent an abuse of discretion[,]" and "the trial court's division of property will be disturbed on appeal only if it is so 'heavily and unduly weighted in favor of one party as to amount to an abuse of discretion.'" *Id.*

## Analysis

### Point I:  Imputation of Income to Husband

Husband's first point on appeal is that the trial court erred in imputing income to Husband for purposes of calculating child support because Husband was not unemployed or underemployed and did not voluntarily reduce his income to evade his parental responsibilities.  We disagree.

4

The trial court calculated monthly child support of $2,252 Husband was to pay Wife for the care of their six minor children remaining in the home with Wife by imputing income of $8,000 per month to Husband. Child support is calculated by the trial court using the Missouri Supreme Court's Form 14 along with its Directions and Comments for Use. *Heck*, 318 S.W.3d at 764. Form 14 considers the respective parents' incomes, and the Directions and Comments provide that a parent's gross income may be based on income imputed to that parent if the parent is unemployed or found to be underemployed. *Id.* Comment H to Line 1 of Form 14 provides:

> *Imputed Income*: When determining whether to include imputed income and, if so, the amount to include in a parent's "gross income," a court or administrative agency shall consider all relevant factors including:
> (1) The parent's probable earnings based on the parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods; and
> (2) The parent's assets, residence, age, and health; and
> (3) The parent's occupational qualifications, employment potential, educational attainments, and record of seeking work; and
> (4) The parent's criminal record or other employment barriers; and
> (5) The available work or employment opportunities in the community and the prevailing earnings level in the local community; and
> (6) Whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home; and
> (7) Other relevant background factors in the case.

"The theory behind imputing income to a spouse/parent is directed toward preventing a spouse from escaping responsibilities to the family by deliberately or voluntarily reducing his or her income." *Cross v. Cross*, 318 S.W.3d 187, 192 (Mo. App. W.D. 2010). "Imputation of income is proper where a parent has voluntarily reduced his or her income without justification." *Id.* "The most common scenario for voluntary reduction of income

5

without justification is where a parent deliberately quits work to reduce his or her child support." *Id.*

Husband's argument is that, since he is employed full time, he is neither unemployed nor underemployed, and thus imputation of income to him was inappropriate.[1]  However, as the trial court found, Husband and Wife decided together to have eight children, six of whom remain unemancipated.  Husband and Wife agreed that Wife would stay home with the children and home-school them while Husband worked many hours each week among several jobs to support the family.  Wife had not worked outside the home since she last held a part-time job in 2002.  Besides home-schooling the children, there are two children who were not yet of school age at the time of the judgment.  Wife has only a GED and extremely limited work experience.  If Wife were to seek employment she would have to find child-care for the two youngest children who were not yet of school age at the time of the judgment, and the remaining children would have to be enrolled in school rather than home-schooled.  Even during the trial, Husband was ambivalent about whether he wanted the children to start attending public school or whether he preferred they continue with home schooling.  Pursuant to the parenting plan to which the parties stipulated, Wife would have all of the children in her care for all but a few hours each week.

---

[1] Husband's argument implies that the extra hours he worked beyond full-time employment should not count toward his gross income for Form 14 purposes.  While a trial court may not require a parent to work overtime for purposes of supporting the family in every case, Comment C of the Directions to Line 1 of Form 14 specifically allows the court to consider the "amount of overtime compensation and earnings from secondary employment received by the parent during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods."  Since Husband had, throughout the marriage, worked many more than forty hours per week, it was appropriately considered by the trial court.

After the separation and after Wife filed for divorce, Husband greatly reduced his working hours and his income. He acknowledged that he could still support himself and his family if he continued to work as he had in the past stating, "If I worked 75 to 100 hours a week, yes, I would. I won't lie. I'm on the stand. But I will not do it. I'm not required to, and I won't do it. I did it for 21 years, and this is where it got me. And I will not do it. I will work a full-time job, and I will make sure it's a good job." Husband made clear his belief was that his former workload was conditional on his being married to Wife and living in the home with the children.

Husband relies on several cases refusing to impute income to one of the spouses. *See, e.g., Buchholz v. Buchholz*, 166 S.W.3d 146 (Mo. App. S.D. 2005) (en banc); *Silverstein v. Silverstein*, 943 S.W.2d 300 (Mo. App. E.D. 1997); *Keck v. Keck*, 820 S.W.2d 727 (Mo. App. W.D. 1991); *Baker v. Baker*, 60 S.W.3d 19 (Mo. App. E.D. 2001); *Elnicki v. Caracci*, 445 S.W.3d 59 (Mo. App. E.D. 2014). All of the cases Husband cites are inapposite. In none of those cases did the spouse to whom income had been imputed voluntarily quit his or her employment or voluntarily and significantly reduce his or her workload for the *stated* reason that the marriage was ending. Instead, this case is similar to *Heck*, 318 S.W.3d at 762-63, where the husband told the wife he was reducing his work to reduce his financial obligations following the divorce. The court in *Heck*, distinguishing *Buchholz*, upheld the trial court's imputation of income finding the husband's protestations not to be credible and emphasizing that a parent could not escape his responsibility for child support by "deliberately limiting his or her work to reduce income." *Id.* at 766. In this case, Husband *admittedly* reduced his workload and his income to avoid his obligations

7

to support the family that he chose to have. The trial court found that "Husband[']s current lesser employment is a result of Husband deciding he is not going to continue to support for [sic] Wife and children post dissolution." The court found that Husband was capable of earning significantly more than he was earning at the time of trial and that he would "likely do so [again] once this case is concluded."[2] We do not find the trial court's imputation of income to Husband to be an erroneous application of the law. Husband's Point I is denied.

### Point II:  Child Support Exceeds Ability to Pay

Husband's second point on appeal is that the amount of child support ordered in the judgment was against the weight of the evidence and that it exceeded Husband's ability to pay. We note initially that this point on appeal, as evidenced by sections A and B of Husband's brief with respect to this point, is multifarious as it makes two distinct arguments. Multifarious points preserve nothing for appeal and are subject to dismissal. *Barbieri v. Barbieri*, 633 S.W.3d 419, 432 (Mo. App. E.D. 2021). Further, "In order to succeed in an 'against the weight of the evidence' challenge, [appellant] needed to provide this Court all the evidence in the record supporting the trial court's decision, provide all the evidence contrary to the trial court's decision resolving all conflicts in testimony in accordance with the trial court's credibility determinations, and then demonstrate why the favorable evidence, with the reasonable inferences drawn from that evidence, is so lacking

_____

[2] Although not in his point relied on, Husband's argument implies that the imputation of income is only supported by evidence of his earnings for a single, atypical year, 2020. Arguments may not exceed the issues raised in the point relied on. *Stickley v. Auto Credit, Inc.*, 53 S.W.3d 560, 564 (Mo. App. W.D. 2001). There was evidence that the tax returns from previous years did not accurately reflect Husband's actual income due to his underreporting of income that was received from his various businesses and treated as cash.

in probative value." *Hark v. Hark,* 567 S.W.3d 671, 678 (Mo. App. E.D. 2019). Failure to follow this framework makes appellant's argument useless and the challenge unsupported and makes the point subject to dismissal. *Langston v. Langston,* 615 S.W.3d 109, 116 (Mo. App. W.D. 2020). However, even reviewing Husband's second point *ex gratia*, we do not find the judgment to be against the weight of the evidence.

The first part of Husband's second point is that the amount of income imputed to Husband for purposes of computing child support is against the weight of the evidence in that the evidence only supports a finding that Husband earned the amount imputed to him in a single, atypical year. The trial court found that in 2020, Husband's gross income was $10,829 per month, and it imputed $8,000 per month to Husband in its calculation of child support. In support of Husband's claim that 2020 was an atypical year that did not accurately reflect his income, Husband argues that he planned to sell his lawn care business to his father, that he "flipped a house" in 2020, which was unusual, and that his tax returns for 2018 and 2019 reflected income of $32,615 and $24,857, respectively.

Husband argues that he is no longer working for the lawn care business or his other former businesses because he voluntarily reduced his workload post-separation, and so the part of his 2020 income attributable to those endeavors should not be considered in support of the imputed income. As discussed in Point I, when income is reduced from a parent's voluntary reduction of workload to avoid support obligations, which Husband admitted at trial, it is properly considered for imputation of income purposes. *Heck*, 318 S.W.3d at 766.

9

Also, the trial court did not find Husband's 2018 and 2019 tax returns and Husband's testimony as to his income in those years to be credible evidence of Husband's earnings for those years. Wife testified that she realized their previous tax returns underreported their income because Husband had taken payments from customers of his businesses and had just "treated that as cash." Wife testified that Husband had always earned enough to support the family, and Husband testified that he still was capable of earning enough to support himself and his family if he resumed his former workload. Accordingly, the trial court's imputation of $8,000 per month to Husband was not against the weight of the evidence.

Next Husband argues that the child support award of $2,252 exceeds Husband's ability to pay. An award of child support must be supported by evidence of the paying parent's ability to pay. *Keck v. Keck*, 820 S.W.2d 727, 729 (Mo. App. W.D. 1991). Husband's argument that he is unable to pay the ordered amount is mostly a rehashing of his arguments that the amount of imputed income is not supportable by the evidence. For the reasons stated above, we find that it was supported and that Husband admittedly has the ability to earn enough income to support himself and his family had he not voluntarily reduced his income and his workload.

Husband's Point II is denied.

### Point III: Earned Income Tax Credit as Income to Wife

Husband's third point on appeal is that the trial court's judgment is in error because the trial court failed to include the Earned Income Credit ("EIC") to Wife as income. Husband argues that Wife will receive a tax credit of up to $3,000 per child over the age

10

of six and $3,600 for each child under the age of six, and that this income should have been considered by the trial court in calculating child support.

Husband did not raise this argument before the trial court. There was no evidence at trial that even touched on the EIC, any amounts that may be involved, or its application to any of the parties to this action. Although Husband claims to have preserved the issue by raising it in his post-trial motion, Husband's Motion for Reconsideration or, in the alternative, to Amend the Judgment does not even mention the words "earned income" or "tax credit" and does not allege that Wife will receive any income whatsoever. Rather, regarding taxes, his motion states:

> 13. That said award [that Wife may claim children as dependents on her income tax returns] is against the weight of the evidence in that the Court found specifically, and repeatedly, that Wife is unable to support herself through appropriate employment and calculated her gross income for child support purposes at zero. Therefore, it is safe to assume Wife will not have income to claim as maintenance is no longer taxable to the receiving spouse and the award to Wife of no fewer than six (6) tax dependency exemptions effectively results in no one successfully claiming the children, or their expenses, for tax purposes.

Although Wife did respond to Husband's motion that she "believe[d] she c[ould] file and obtain a child tax care credit even without taxable income because it is a credit," there is absolutely no evidence in the record that Wife will receive such credit or that she will be entitled to one or any evidence as to the amount of any credit.

More importantly, "[e]ven in a court-tried case, where a post-trial motion is not necessary to preserve an *otherwise properly raised issue* for appellate review, the appellant must make some effort to bring the alleged error to the trial court's attention." *Heck*, 318 S.W.3d at 767. "With only rare exceptions, an appellate court will not convict a trial court

11

of error on an issue that was never presented to the trial court for its consideration." *Id.* (quoting *McMahan v. Mo. Dep't of Soc. Servs. Div. of Child Support Enforcement*, 980 S.W.2d 120, 126 (Mo. App. E.D. 1998)). Because this issue was not properly raised before the trial court, it is not preserved for review.

Point III is denied.

### *Point IV: Maintenance Award*

Husband's fourth point on appeal is that the trial court abused its discretion in awarding Wife maintenance because: the court did not include Wife's income from the EIC; Husband does not have the ability to pay Wife and still cover his own expenses; and the court included the children's expenses in calculating Wife's reasonable and necessary expenses for maintenance purposes. Merely restating Husband's fourth point on appeal reveals its multifarious nature; this point asks us to convict the trial court of three unrelated errors. "Multifarious points preserve nothing for review." *Guglielmino v. Jackson Cty.*, 609 S.W.3d 852, 856 (Mo. App. W.D. 2020).

Moreover, Husband did not argue to the trial court in his Motion to Reconsider *either* that many of Wife's stated reasonable and necessary expenses were actually expenses of the children or, as mentioned in our discussion of Point III, that Wife had any income whatsoever from any tax credits or any other source. "We will not convict a trial court of error for an issue not presented for its determination." *Sparks*, 417 S.W.3d at 284. And, as we noted in our discussion of Point I, the trial court discredited Husband's evidence that he had an inability to pay Wife and still meet his own needs. Husband's own testimony admitted that he could meet his own needs and those of his former wife and their children.

12

Husband's Point IV is denied.

### Point V:  Award and Valuation of the Marital Home

Husband's fifth and final point on appeal is that the trial court abused its discretion in its award and valuation of the marital home because Husband valued the home at a significantly higher amount and offered to keep the home at that valuation with a corresponding offset payment to Wife.

"Property valuation 'is a *determination of fact* by the trial court, to which we give great deference, [and n]o one formula or method of determining value is binding or conclusive.'"  *Sparks*, 417 S.W.3d at 285 (quoting *Thill v. Thill*, 26 S.W.3d 199, 203 (Mo. App. W.D. 2000)).  The court has broad discretion in valuing marital property so long as the valuation is supported by substantial evidence. *Id.*  It is undisputed that Wife's real estate expert testified that the value of the marital residence was $179,000.  Additionally, although Husband had obtained an expert's report valuing the home at a higher level, Wife's expert explained, at length, why Husband's valuation was excessive and discussing many comparable properties near the marital residence.  A trial court is free to "accept the valuation opinion of one expert over another," and as long as the trial court's valuation of the property "is within the range of conflicting evidence of the value offered at trial," the court is acting within its discretion to resolve the conflicts in the evidence. *Id.* at 286.  The trial court's valuation is within the range of the evidence and is thus not an abuse of discretion.

The trial court also has broad discretion in dividing marital property.  *Handy v. Handy*, 338 S.W.3d 852, 856 (Mo. App. W.D. 2011).  Additionally, it is proper for the trial

court to consider "the desirability of awarding the marital home to the custodial parent[.]" *Shepard v. Shepard*, 47 S.W.3d 412, 417 (Mo. App. S.D. 2001). With the exception of Husband's visitation with the children two hours each week, Wife was awarded sole custody of all six minor children remaining at home, several of whom have never known any other home than the marital residence. Further, based on the limited marital assets that were divided between the parties, it would be difficult for Wife to find a new home of sufficient size to accommodate herself and the children. The total assets were divided between Husband and Wife in a roughly equal division. It was not an abuse of the trial court's discretion to award Wife the marital home. Husband's offer to accept an award of the marital home at his much greater valuation is irrelevant to this appeal and does not render the trial court's judgment an abuse of discretion.

Husband's Point V is denied.

### Conclusion

For all of the above-stated reasons, we affirm the judgment of the trial court.

_____
Gary D. Witt, Judge

All concur

14